The City of Dubuque v. Miller.

---

THE CITY OF DUBUQUE v. MILLER.

1. TENANTCY AT WILL. The defendant held and occupied a stall in a public market, as the tenant of the plaintiff, for the term of one year, and at the expiration of the term he retained the possession, and en-

tered into an agreement to lease the premises for another year, but refused to pay the rent in accordance with the terms of the agreement: *Held* that he was a tenant at will, and not from year to year.

2. AMENDMENT OF DUBUQUE CITY ORDINANCE. In 1858 the City of Dubuque by ordinance provided for the sale, on the first day of each year of the right to occupy stalls in the public market, for "cash or city issue; and on the 16th of May 1860 the city council directed the sale of stalls "for cash." *Held*, that a tender of city scrip, as a payment for the right to use a stall, under an agreement made after the last mentioned date, was insufficient.

3. DUBUQUE CITY CHARTER. Chapter 210 laws of 1857 confers upon the city council of the City of Dubuque the power to lease the stalls in the public markets of the city, without submitting the proposition to lease to the legal voters of the city.

*Appeal from Dubuque City Court.*

TUESDAY, JUNE 4.

THE facts of this case sufficiently appear in the opinion.

*Wilson, Utley & Doud* for the appellant.

*O'Niel & Harvey* for the appellee.

WRIGHT, J.—The Central Market in the City of Dubuque was owned by the corporation. Stall number 19 in that market was occupied by defendant, to recover which this action was brought. Judgment being against defendant, upon an agreed statement of facts, he appeals.

I. Defendant relies upon his right as a tenant, the sufficiency of which as a defense to the action under the circumstances disclosed, is contested by the city. It seems that on the first of May, 1859, defendant leased this stall from the city for one year, for the rent of fifty dollars, and entered into the possession of the same, which he continued to hold until the commencement of this action. In April, 1858, the city passed an ordinance providing for the sale of the right to occupy stalls in the market, on the first day of May in each year, at public outcry, for *cash or city issue*. After this sale a written lease was to be made out to the several

purchasers, they first paying the rent thus bid to the treasurer. On the 16th of April, 1860, the city council fixed as the minimum rent of stalls in the market, the sum of fifty dollars *in cash*. On the 3rd of May in the same year these stalls were ordered to be sold on the 7th of that month. This sale was conducted by the city marshal, who announced that the rent bid must be paid *in cash*. Defendant bid for the stall he then occupied $50,10 for one year from the 1st of May 1860. On the 10th of May, 1860, defendant tendered to the city treasurer $50 in *city scrip* and ten cents in cash for the rent of the stall which was refused. July 14th, 1860, defendant was notified in writing, by the city, that his tenancy of the stall in controversy, would terminate on the 15th of August following and he was required to deliver possession of the same to the city on or before that date. Failing to deliver this possession, this action was commenced on the 20th of August next thereafter.

The tenancy of the defendant was *at will*, and not from year to year, after the first of May 1860. Until he complied with the ordinance, by paying the amount bid, he had no right to the possession, and was in no sense in the condition of a tenant holding over with the consent of his landlord. The sale of the stall to him on the 7th of May, 1860, without a payment of the rent, gave him no more right than if he had made no bid. The prior possession could not avail him, for by the express terms of his lease, his right thereunder expired on the 1st of May, 1860. To hold that this was a tenancy from year to year, upon any hypothesis urged by appellant, we should at least have to first find that the tenant held over by the consent, either expressed or implied, of the landlord, thus affording evidence of a new contract. Now it is true that if the tenant, with the consent of his landlord, continues in possession after the expiration of a term of years, the law implies, in the absence of an express agreement, that the premises are held on the former terms, it being supposed that the previous agreement has been re-

newed for at least another year. (Tayl. L. & T., sections 60 and 467; 4 Wend. 327; 5 Hill. 20.) But in this case the want of consent on the part of the landlord, prevents the application of the rule stated. The case rather falls within the classes following: If A enters into an agreement to lease (taking possession) but has not paid rent, he is held to be a tenant at will. (*Sullivan* v. *Enders*, 3 Dana. 66; *Nichols* v. *Williams*, 8 Cow. 75.) Or, if he enters into possession under an agreement to accept a lease for twenty months, which he refuses to accept, he becomes by such refusal a tenant at will. (*Anderson* v. *Prindle*, 23 Wend. 616.) Or, in a case more parallel, if after his lease has expired, he is permitted to continue in possession, *pending a treaty for a further lease*, he is not a tenant from year to year, but at will. *Jackson* v. *Miller*, 7 Cow. 747; *Same* v. *Moncreif*, 5 Wend. 26; Tayl. L. & T., section 60.

Being a tenancy at will, therefore it was terminated at the expiration of thirty days from the notice of the 14th of July, 1860. Laws of 1858, chapter 49.

II. The ordinance of April 1858, providing for the payment of rent in *city issue or cash*, was amended in April, 1860, by requiring the payment *in cash*. At the sale an announcement to this effect was made by the city marshal, before the defendant made his bid. Whatever legal right the defendant might have had to pay his rent in city scrip and demand a deed, if there had been no order for its payment in cash, or if the ordinance had been silent in this respect, we think that under the circumstances disclosed, it was his duty to pay in money and that his tender of the scrip was not sufficient. He, by his bid, in effect undertook and agreed to comply with this order and to pay in this way, and it was no compliance with his contract to offer to pay in the city indebtedness. That it was competent for the city to make this order applicable to future contracts, we entertain no doubt.

III. It is urged that by the charter of the city of Dubuque,

the city council had no power to lease those stalls, that by sub-division 22, of section 7, chapter 210, Laws of 1857, the power of the council to sell real estate only arises when authorized to do so by a majority of the legal voters of the city; that the proposed lease, as well as the one under which defendant held in 1859, amounted to a sale of the city property, without authority from the legal voters as contemplated by the charter, and could not therefore be enforced· Grant this proposition, and how can it aid defendant? If there was no power in the council to lease, then the city was not bound, and defendant acquired no right. Not only so, but we are of the opinion that the words "dispose" and "sale" as used in the subdivision referred to, are not to be construed as claimed by appellant. This inhibition upon the power of the council to dispose of and make sale of the real estate of the city, has reference to transactions which shall result in parting with the title and vesting it permanently and entirely in another. It never was intended that a stall in the market house could not be leased, without the authority of a majority of the legal voters. See sub-divisions 15 and 27, of section 7, and section 6, of the charter, and *Davenport* v. *Kelly*, 7 Iowa 102.

Affirmed.