MIDDLETON SAVINGS BANK v. THE CITY OF DUBUQUE *et al.*

1. RESTRICTION UPON SALE AND CONVEYANCE. A restriction upon the sale of property belonging to a municipal corporation, by the common council thereof, is also a restriction upon the conveyance thereof.

2. GRANT OF POWER. The intention of the donor in the grant of a power is the cardinal principle that governs in its construction; and this intention is to be ascertained primarily from the language employed and the object and purpose in view.

3. DUBUQUE: MORTGAGE. Section 26 of the charter of the City of Dubuque invests the city council with the full control of the city property, real, personal and mixed, and contains a complete grant of power to be exercised and used for the benefit and use of the inhabitants of said corporation. The inhibition contained in the proviso in said section applies to alienations of real property, and not to the execution of a mortgage or the creation of an incumbrance thereon. BALDWIN, Ch. J., dissenting.

4. CONSTRUCTION OF A MORTGAGE. A mortgage executed by the city of Dubuque upon certain real estate to secure the payment of certain bonds issued by said city for money borrowed, contained the following stipulation: "The said city reserves the right, whenever the real estate herein conveyed exceeds in value the amount of the within named consideration, to dispose of such excess, the valuation to be determined at any time by mutual agreement, or by a reference to three disinterested persons as the parties may agree, and the said city also hereby reserves the right to release the aforesaid real estate from the incumbrance herein created at any time, by giving such other security in lieu thereof for the payment of the within named sums of money as shall be deemed sufficient by three disinterested persons, mutually chosen by the respective parties. In a proceeding to foreclose, subsequent purchasers of a portion of the mortgaged property alleged that at the time of this purchase the property exceeded in value the consideration named in the mortgage, and that after the conveyance to them, the value of the remainder was equal to the amount of such consideration. *Held*, on demurrer to the answer, that the value at the time of the purchase, as set out in the answer and not the time of the filing of the answer, was contemplated by the terms of the mortgage.

*Appeal from Dubuque District Court.*

FRIDAY, DECEMBER 18.

A demurrer to the answer of one of the respondents (The Dubuque Harbor Company) was overruled. At a subsequent term (another Judge presiding) a demurrer to the answer of Pennock & Hart, setting up in part the same matters, was sustained. From these several orders the unsuccessful parties appeal.

*Austin Adams* and *F. E. Bissell* for the complainant.

1. A power to sell does not include a power to mortgage.

4 Comst., 9 ; 6 Cush., 117. By analogy, a restriction upon selling is not a restriction upon mortgaging.

2. The charter empowers the City Council to sell and convey the real estate of the city, but prohibits the City Council from selling the real estate of the city without the assent of the qualified voters thereof.

It will be observed that the grant of power. is more extensive than the restriction. The City Council may sell and convey but may not sell without, &c. There is a clear implication that the Council may convey without the assent of the qualified voters of the city. The charter must be construed as if the Legislature purposely omitted the word convey in the restrictive clause. *Expressio unius est exclusio alterius.*

3. A mortgage is a conveyance. 4 Kent's Com., 133. A mortgage is not a sale. 1 Hill. on Mortg., 85, 215, 249 ; 4 Iowa, 434; 5 N. H., 432; 5 Foster, 425 ; Story's Eq. Jur., § 1109.

4. There was a good reason why the Legislature did not place the word convey in the restrictive clause, and thereby prohibit the City Council from securing the debts of the city without taking a vote of the qualified voters. It is fair to presume that if loans were to be negotiated it could always be done more advantageously upon suitable security, than without. The City of Dubuque going into market with its bonds would always realize more, it is presumed, for the same amount of bonds if--secured, than if not. Good financiering, therefore, would seem to require that security should always be given if convenient.

If there were any doubt about this, it would still be a mere question of financial policy, and would be more properly committed to the City Council than to the whole body of voters.

5. The sale of the real estate of the city is an entirely different thing. The Legislature considered (and very

wisely perhaps) that this matter of absolutely alienating the real estate of the city at private sale, was a trust too important, and too easily abused to be committed to the Council. A method, however, which involves publication and a vote of the people, whereby all the citizens may have notice, is not subject to the same objection.

*John L. Harvey* for the respondents, The Dubuque Harbor Improvement Company.

The first question is: " Did the 25th section of the charter prevent the City Council from conveying the land to F. S. Jessup & Co., without first submitting the matter to the qualified voters ? Plaintiff says a power to sell does not imply a power to mortgage, therefore to prohibit a sale does not prohibit a mortgage. It is by no means settled that a power to sell does not include a power to mortgage. Sir Edward Sugden, in his work on Powers, 1st American from the third London edition, 478, says: " A power to sell and raise a sum of money implies, it seems, a power to mortgage, which is a conditional sale; and a power generally to raise a sum out of an estate, enables a sale of it. But where a power is given to raise money by sale or mortgage, if the parties intend that a sale may be made after a mortgage in order to pay it off, the intention should be clearly expressed, as it is doubtful whether, if a mortgage be first made, the power is not wholly exhausted, so that a sale cannot afterwards be made to exonerate the estate; and it is clear, that in a case of this kind the mortgagee cannot require a sale, even if the power authorize a sale, for he is no object of the power, further than as that power enabled the donee to make him a good mortgage." In *Gordon* v. *Preston*, 1 Watts, 386, the Court says: " By the second section of the act of incorporation, the Company was authorized to purchase in fee or for any less estate all such lands, tenements or hereditaments, and estate

real and personal, as shall be necessary and convenient for them in the prosecution of their works; and the same to sell and dispose of at their pleasure. According to the principle of *Lancaster* v. *Dolan*, 1 Rawle, 131, a power to sell includes a power to mortgage even under the statute of uses, though strictly construed."

Lord Chancellor MACCLESFIELD in *Mills* v. *Banks*, 3 Peere Williams, 9, says: "And a power to sell implies a power to mortgage, which is a conditional sale." In *The Cleveland Insurance Company* v. *Reed et al.*, 6 Am. Law Reg., 413, the Court says: "A power to sell lands usually includes a power to mortgage; but a mortgage under such a power for a greater sum than is actually loaned, may be repudiated by the principal." Chancellor KENT, 4 Commentaries, 363 of the 8th edition, lecture 62, states the law as follows: "A power will enable the donee to dispose of a fee, though it contain no words of inheritance as in the case of a power given by a testator to sell or dispose of lands; and this construction is adopted in favor of the testator's intention. So a power to charge an estate with nothing to restrain the amount, will, in equity, authorize a charge to the utmost value; and as equivalent to it, a disposition of the estate itself, in trust to sell and divide amongst the objects. And on the other hand, a power to grant or appoint the land, will authorize a charge upon it; and a power to sell and raise money, implies a power to mortgage. If, however, the interest be expressly indicated by the power, a different estate cannot be appointed under it; though without positive words of restriction a lesser estate than that authorized may be limited. *The intention of the donor of the power is the great principle that governs in the construction of powers;* and in furtherance of the object in view, the Courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power or cut down a general power to a par-

ticular purpose." See also 2 Pars. Cont., 28; Broom's Leg. Max., marg., 505; *Cape Sable Company's case*, 3 Bland (Md.), 106.

WRIGHT, J. — Complainant seeks to foreclose a mortgage made by the City of Dubuque, to Jessup & Company, upon several parcels of real estate, to secure certain bonds for money loaned, amounting in the aggregate to the sum of thirty thousand dollars. The respondents, claiming to be subsequent purchasers of a portion of the lands thus encumbered, set up the following matter in defense. That at the time of the execution of said mortgage, the City of Dubuque was a municipal corporation acting under and by virtue of a charter from the Legislature of the State of Iowa, section 25 of which was as follows, to wit: " That the said City Council shall have the custody, care and management of all real, personal and mixed estate, and other corporate property of said city, and all the real, personal and mixed estate, money, funds and revenues, which from time to time may be owned by, or of right belonging to said city, with full power to purchase, hold, possess and occupy, and to sell and convey the same for the use and benefit of said city and the inhabitants thereof; provided, that the City Council shall not have power to sell any real estate belonging to the said City of Dubuque, unless the qualified voters thereof, in pursuance of ten days' previous notice given by order of the City Council, and published in one or more newspapers printed in said city, setting forth the time, place and purpose of voting, and there shall be a majority of written or printed ballots given expressing their assent thereto." It is then averred that prior to the date of said mortgage, the qualified voters of said city did not by a majority of written or printed ballots express their assent to the making of the same; nor was the question ever submitted to the voters of said city whether the

said City Council should have power to execute and deliver said instrument.

Plaintiff's demurrer to this portion of the answer, makes the point, that while the City Council could not sell the real estate of the city without a vote, such vote was not necessary to authorize the execution of a mortgage or other instrument encumbering such property as security¹ for money loaned.

The question whether a power to sell does or does not include a power to mortgage, discussed to some extent by counsel, we do not deem it necessary to examine. For from the view we take of the case it has no practical importance. Nor do we give weight to the thought that the City Council may convey, but cannot sell, without a vote of the qualified electors. If there is a restriction upon selling, then until the conditions of the statute are complied with there can be no valid conveyance, for such conveyance is but the consummation of, or the evidence of the sale. A power to an agent to sell and convey property upon certain terms or conditions, is a restriction upon the conveyance as well as the sale, unless the conditions are followed. A sale and conveyance, under such circumstances, or within the purview of such a power, are one and the same act. The conveyance is simply the formal act necessary to complete or carry out the previous sale or contract.

But the intention of a donor of a power (as in all conveyances) is the great or cardinal principle that governs in its construction. (4 Kent, 8 ed., 363.) And this intention is to be arrived at primarily from the language employed, and the object and purpose in view in its execution. With this general proposition in view, we remark that the words "sell and convey," in that portion of the section (above quoted), giving the power, when taken in connection with the entire language, were intended to invest the council

with the full control of the city property, real, personal and mixed, and to express a complete grant of power; such power or control of course being exercised for the use and benefit of the inhabitants. The power to execute a mortgage to secure a loan made for the benefit of the city, is found in the character of the incorporation, the general powers conferred, and the object and purpose of the Legislature. In other words, if this proviso was not in the act, the City Council would clearly have the power to make a mortgage, as well as an absolute conveyance. What is the meaning then of the restriction contained in the proviso? For this, after all, is the very question to be determined. Is a mortgage an alienation within the meaning of the words: " *The City Council shall not have power to sell any real estate, unless, &c. ?*"

In *The City of Dubuque* v. *Miller*, 11 Iowa, 583, construing a corresponding section in the charter of this city, passed in 1857, it is said that this "inhibition has reference to transactions which shall result in parting with the title and vesting it permanently and entirely in another. It never was intended that a stall in the market-house could not be leased, without the authority of a majority of the legal voters." And the proposition is equally true, in our opinion, when applied to a mortgage. The sale contemplated in the restriction, refers to an alienation, not a mere incumbrance. Under our law, the legal title remains in the mortgagor. The mortgagee acquires no right to the property, which can be attached, reached by the levy of an execution, nor that can be inherited. The mortgage is but a lien upon the land to secure the payment of the debt. The thought that the city property might thus indirectly be sold without a vote of the people, is entitled to but little weight, for the same thing might be accomplished by incurring a simple debt, upon which judgment might be recovered and the property sold under execution. And

that a debt might be contracted without a vote, is undenied. The publicity of the judicial proceedings and Sheriff's sale would give ample opportunity for the detection of any fraud and the protection of the interest of the city by any one interested.   But in the case of a private, absolute sale, it was deemed wiser and safer to first take the opinion of the inhabitants, and thus remove the opportunity for fraud and speculation on the part of the city authorities. (*De Ruyter* v. *St. Peter's Church*, 3 Comst., 238.)

II. Another question made arises upon the following facts: The mortgage (and this is the character of the security, though sometimes spoken of by counsel as a deed of trust), contains this provision : " The said city reserves the right, whenever the real estate herein conveyed exceeds in value the amount of the within named consideration, to dispose of such excess, the valuation to be determined at any time by mutual agreement, or by a reference to three disinterested persons as the parties may agree ; and the said city also hereby reserves the right to release the aforesaid real estate from the incumbrance herein created, at any time, by giving such other security in lieu thereof, for the payment of the within named sums of money, as shall be deemed sufficient by three disinterested persons, mutually chosen by the respective parties."

The answer of The Harbor Company sets up that the city, in 1857 (the mortgage was made in 1853), sold and conveyed to said respondents a portion of the property so incumbered, and then follows this averment: "At the time the above mentioned land was conveyed to this defendant by said city, the real estate mentioned in said deed of trust exceeded in value the amount of the consideration named in said trust deed, and after a part of said land had been conveyed to this defendant (as set forth above), there was still enough of the land mentioned in said first

trust deed left to amount in value to thirty thousand dollars."

To this portion of the answer complainant demurred, upon the ground that in order to constitute a defense, it should allege that there was now, or at the time of pleading, enough property left to pay said thirty thousand dollars.

A demurrer must distinctly specify and consecutively number as the grounds of objection some matter of error intended to be argued as a defect in the pleading. Revision of 1860, § 2877. A party will not be allowed to state one ground of objection, and argue and obtain judgment for another. 15 How. Pr., 500.

We have, therefore, nothing to do with any other objection than the one specified. Counsel for appellee makes this point, and we think it is well taken.

Passing any other objection to this clause of the answer, then, is it defective for the reason specified? It seems to us not. If at the time of such sale the unsold portion was sufficient to meet the debt, its value at the time of pleading or at any period subsequent to such sales, would be immaterial. The after appreciation or depreciation in the value of the property could make no difference. Whether the valuation should have been determined by mutual agreement or by a reference — whether a failure to have such valuation could interfere with complainant's security — whether an averment that the portion left was of the value of thirty thousand dollars (leaving out of the account the interest) or whether for any other cause the answer is objectionable, we need not determine. We only decide that for the cause stated, the demurrer was not well taken.

The point last discussed did not arise upon the answer of Pennock & Hart. The rulings of the Court below are affirmed, complainant and respondents (Pennock & Hart) each paying half the costs of this appeal.

BALDWIN, Ch. J. — I concur in the conclusion of a majority of the Court that this cause should be affirmed, but dissent from the view taken that the City Council of Dubuque had the power to execute the mortgage sought to be foreclosed without the assent of the voters of said city. I think that no such power exists unless it is conferred by an act of the Legislature; and that the act which it is claimed confers this power, expressly inhibits any transfer of any of the real estate of said city either by sale or mortgage without such assent.