KRIDER, Admrs., v. THE TRUSTEES OF WESTERN COLLEGE.

1. Principal and agent: RATIFICATION IN PART. The rule recognized and declared, that a ratification by the principal as to a part of a transaction of the agent operates as a ratification of the whole of that particular transaction; as where an agent contracts a debt and executes a mortgage on the property of the principal to secure the same, a ratification of the debt by the principal, having knowledge of the whole transaction, operates as a ratification of the mortgage also.

2. Corporation: POWER OF TRUSTEES TO MORTGAGE: INHIBITION TO SELL. An inhibition upon the board of trustees of a corporation by one of the articles of its incorporation, to *sell* real estate, is not necessarily an inhibition upon the power to *mortgage*.

*Appeal from Linn Circuit Court.*

SATURDAY, JUNE 17.

THE petition alleges, in substance, that the defendant is a corporation, organized under the laws of Iowa; that on the 16th day of October, 1868, the defendant, by its president, S. Weaver, made to Tobias Krider, now deceased, its promissory note as follows:

"NORTH LEBANON, *October 16th,* 1858.

" On or before the 1st day of April, 1861, the board of trustees of Western College of the United Brethern in Christ promise to pay Tobias Krider or his order the sum of five thousand three hundred dollars, with ten per cent

interest from the 1st day of April, 1859, without defalcation, for value received."

That to secure the payment of this note a mortgage was executed and delivered, by said Weaver, upon sixteen and one-half acres of ground, being the grounds upon which the college buildings are situated; that Tobias Krider died intestate and that the plaintiffs are his administrators. A judgment for an alleged balance due on the note, and decree of foreclosure is prayed.

The defendant, in its answer, denies that they ever made or authorized any one to make a note to said Krider for the sum of $5,300, or any other sum. Deny that they made or authorized said Weaver to make the mortgage set up, and aver that by their articles of incorporation they were expressly prohibited from mortgaging said premises; admit that Weaver was president of the college at the time, but aver that he made the note and mortgage without their knowledge or consent, etc.

The cause was tried to a jury, who returned a general verdict for the plaintiffs for $7,648.15, and answers to the following special interrogatories:

"Do you find that S. Weaver executed the note and mortgage in controversy, as president of the board of trustees of Western College?

Answer—Yes.

Do you find that the said board of trustees had, prior to, or at the time of, the execution of said note and mortgage, authorized the said Weaver to borrow money and contract debt on behalf of said board?

Answer—Yes.

Do you find that said Weaver did contract the debt in controversy?

Answer—Yes.

Did said board of trustees, after the giving of said note and the contracting of said debt, ratify the said action of said Weaver?

Answer—Yes.

Do you find that said board of trustees authorized said Weaver to mortgage the premises in controversy to secure the note sued on ?

Answer—No.

Do you find that said board of trustees, prior to, or at the time of, the execution of the said note and mortgage, was authorized by a vote of two-thirds of all the members composing the conferences, co-operating and aiding in the erection of the college building of defendant, to mortgage the premises in controversy ?

Answer—No.

Do you find that the lands mortgaged are those on which the said college buildings are situated ?

Answer—Yes."

The plaintiffs moved for a decree of foreclosure upon the verdict and findings of the jury, which was refused by the court. They also made a motion for a new trial, which was overruled, to which they excepted and appeal.

The further facts are stated in the opinion.

*A. S. Belt* for the appellants.

*W. G. Thompson* and *A. D. Colllier* for the appellees.

MILLER, J. — I. The special findings of the jury show that the note and mortgage sued on were executed by S. **1. PRINCIPAL AND AGENT: ratification in part.** Weaver, in his capacity of president of the board of trustees of the college; that prior to, and at the time of, the execution of the same, he was authorized by said board to borrow money and contract indebtedness on behalf of the corporation ; that, in pursuance of such authority, the indebtedness in this case was created ; and that the making of the note and the creation of the debt were ratified by the board of trustees; respecting these facts there is no controversy, so that the only point of

controversy is in respect to the authority of Weaver, as president of the board, to make the mortgage on lands upon which the college buildings are situated. The jury found, by their sixth special finding, that the board of trustees had not authorized Weaver to mortgage these premises.

It is insisted by counsel for appellant, that this finding is against the evidence, contrary to law, and inconsistent with the other findings.

As before stated, the jury found that Weaver was authorized to borrow money on behalf of the corporation, and that the board of trustees ratified his action in giving the note sued on and in the creation of the debt evidenced thereby; and there is no room for controversy that they did so with full knowledge of the fact that Weaver had also, at the same time, executed the mortgage on the college grounds to secure this same debt; that the borrowing of the money for the college and the making of the note and mortgage constituted but one transaction.

The law is well settled that the principal cannot, of his own mere authority, without the consent of the other party, ratify a transaction by his agent in part, and repudiate it as to the rest. He must either adopt the whole or none. And hence, the general rule is deduced, that where a ratification is established as to a part, it operates as a confirmation of the whole of that particular transaction of the agent. Story on Agency, § 250, and cases cited in notes.

In this case the board of trustees send their president out, clothed with authority to borrow money on their credit. He does so; executes a promissory note in the name of the board of trustees as evidence of the loan, and to secure the payment thereof, according to the terms of the note, executes a mortgage upon property belonging to the corporation, whose agent he is; and afterward they, *with full knowledge of all the facts*, ratify the creation of the debt and the giving of the note. By these acts, without

more, they have, so far as they had the power, confirmed the entire transaction, including the making of the mortgage.

These conclusions are drawn from the findings of the jury, the correctness of which appellee does not question. But, upon the evidence in the case, we are of the opinion that there was never, in fact, any repudiation, by .the board of trustees, of the making of the mortgage by their president. On the other hand, it is quite conclusive to our minds, that the execution of the mortgage was expressly ratified, and that the answer of the jury to the sixth interrogatory is against the evidence.

II. It is insisted by counsel for appellee that, under the articles of incorporation, the board of trustees of the college could not confer authority upon their president to make the mortgage, except as specified in the articles of incorporation, and that, under the seventh special finding of the jury, the court was justified in refusing to render a decree foreclosing the mortgage.

2. CORPORA-
TION: power
of trustees to
mortgage: in-
hibition to
sell.

The article referred to .is as follows: " ART. 3. This corporation shall have power to sell and convey, and execute deeds for the same, all real estate purchased by or donated to said association for the purpose of aiding in the erection of said buildings, except so much of said lands hereinbefore described as said board may deem necessary for a site on which said buildings shall be located, which *said site shall not be sold, altered or changed, except by a vote of two-thirds* of all the members composing the conferences co-operating and aiding in the erection of said buildings."

It is not claimed that this vote was ever obtained.

The question here presented is, whether the ·inhibition thus imposed upon the power to sell the lands. upon which the college buildings are situated is also an inhibition upon the power to mortgage them.

In *The City of Dubuque* v. *Miller*, 11 Iowa, 583, it is held that an inhibition upon the power to sell is not an inhibition on the power to lease. That the former has reference to transactions which shall result in parting with the title and vesting it permanently and entirely in another; and in *Middletown Savings Bank* v. *The City of Dubuque*, 15 Iowa, 394, 401, Mr Justice WRIGHT, after referring approvingly to the decision in *Dubuque* v. *Miller*, *supra*, says: "The proposition is equally true, in our opinion, when applied to a mortgage. The sale contemplated in the restriction refers to an *alienation*, not a mere incumbrance. Under our law the legal title remains in the mortgagor. The mortgagee acquires no right to the property which can be attached, reached by a levy of an execution, or that can be inherited. The mortgage is but a lien upon the land to secure the payment of the debt." And it is accordingly held in that case, that the restriction upon the city council of the power to "sell and convey" certain lands without a vote of the people of the city, was no inhibition upon the power to mortgage the same lands.

These cases are decisive of the question under consideration, and our conclusion is, that the inhibition contained in the articles of incorporation of defendant upon the power to "sell" the college property described, is not a restriction upon the power of the trustees of the corporation to mortgage the same property.

The cases cited by appellee's counsel are not in conflict with this conclusion, or with the cases above referred to.

The order of the circuit court, overruling plaintiff's motion for a decree of foreclosure of the mortgage, was erroneous, and is reversed; and the cause will be remanded with directions to the court below to render such decree, or, if plaintiff so elects, a decree of foreclosure will be rendered in this court.

Reversed.