## COMMERCE TRUST CO. v. CHANDLER et al.

## CHANDLER et al. v. COMMERCE TRUST CO.

(Circuit Court of Appeals, First Circuit. November 3, 1922. Petition for Rehearing Denied December 18, 1922.)

### Nos. 1560, 1561.

1. **Corporations ⬡415—Directors of Massachusetts corporation held without power to mortgage all its assets.**

   Under Massachusetts Corporation Law (St. 1903, c. 437) § 19, providing that the board of directors of a corporation may exercise all the powers of the corporation, "except such as are conferred by law, or by the by-laws * * * upon the stockholders," and section 40, providing that the corporation may, by vote of two-thirds of all its stock, "sell, lease or exchange all its property and assets," the board of directors of a corporation *held* without power to authorize a mortgage of all the assets and the good will of the corporation to secure a demand note; such a mortgage under the laws of the state being in legal effect a sale, subject to defeasance.

2. **Corporations ⬡440—Demand mortgage of all assets potential sale of business.**

   A mortgage of all corporate assets, including the good will of a corporation, to secure a demand note, is as effective to put the corporation entirely out of business as an out and out sale, lease, or exchange of its property.

3. **Corporations ⬡440—Power to mortgage only coextensive with power to sell.**

   The power of a corporation to mortgage is equivalent to the power to sell or lease, and can only be coextensive with the power to alienate absolutely.

### On Petition for Rehearing

4. **Appeal and error ⬡173(2)—Appellant cannot raise new issues in appellate court.**

   Where appellant intervened in a receivership suit against a corporation, claiming a lien under a mortgage made by the corporation, and the matter was heard and determined on the issue of the validity of the mortgage under the state statutes, appellant cannot shift its ground in the appellate court to one not asserted in the trial court, nor by the assignments of error, by claiming, without proof, that the corporation is insolvent, and that the receivers cannot attack the validity of the mortgage as ultra vires.

Appeal from the District Court of the United States for the District of Massachusetts; George Hutchins Bingham, Judge.

In equity. On intervening petition of the Commerce Trust Company against F. Alexander Chandler and Carleton Hunneman, coreceivers of the Nelson Blower & Furnace Company. From the decree, both parties appeal. Reversed.

For opinion below, see Petition of Commerce Trust Co., 275 Fed. 206.

Robert G. Dodge, of Boston, Mass. (Asa S. Allen and Laurence Curtis, 2d, both of Boston, Mass., on the brief), for intervener.

Judd Dewey, of Boston, Mass., for coreceivers.

Before JOHNSON and ANDERSON, Circuit Judges, and HALE, District Judge.

ANDERSON, Circuit Judge. [1] The crucial question in this case is whether the court below was right in holding valid a chattel mortgage given by the Nelson Blower & Furnace Company, a Massachusetts corporation, covering all its corporate assets, tangible and intangible to secure a demand note of $25,000, without authorization or ratification by two-thirds of the stockholders at a meeting duly called for that purpose as provided in St. 1903, c. 437, § 40.

This question turns upon the proper construction of various provisions in this Corporation Act. As noted by the court below, this exact question seems never to have been passed on by the Massachusetts court. Here, as always, initial construction of state statutes by a federal court is undesirable; but the problem is plainly presented and we cannot avoid it.

A Massachusetts business corporation is authorized under Statutes of 1903, c. 437, § 4 (f):

"To hold, purchase, convey, mortgage or lease within or without this commonwealth such real or personal property as the purposes of the corporation may require."

In section 19 of this act it is provided:

"The board of directors may exercise all the powers of the corporation, except such as are conferred by law, or by the by-laws of the corporation, upon the stockholders."

Section 40 of the same act provides that:

"Every [such] corporation * * * may, at a meeting duly called for the purpose, by the vote of two-thirds of all its stock, or, if two or more classes of stock have been issued, of two-thirds of each class of stock outstanding and entitled to vote, or by a larger vote if the agreement of association so requires, change its corporate name, the nature of its business, the classes of its capital stock subsequently to be issued and their voting power, or make any other lawful amendment or alteration in its agreement of association or articles of organization, or sell, lease or exchange all its property and assets, including its good will and its corporate franchise, upon such terms and conditions as it deems expedient."

In the articles of agreement of the Nelson Company is found the now common provision that the board of directors may exercise "all such powers of the corporation as are not by law or by the by-laws required to be otherwise exercised." The by-laws do not reserve to the stockholders power to mortgage.

The petitioner relies upon a vote of the board of directors on August 22, 1919; three of the four members being present, and voting:

"That the corporation borrow from the Commerce Trust Company a sum not exceeding twenty-five thousand dollars ($25,000) and that the president, Albert H. Nelson, be authorized to sign a note for the amount so borrowed upon such terms as seem expedient and that he be authorized to execute a mortgage of all the personal property of the corporation to the said Commerce Trust Company for a sum not to exceed twenty-five thousand dollars ($25,000) in the name and behalf of the corporation, and that the seal of the corporation be attached thereto."

The mortgage given covered, broadly, all the corporate assets, tangible and intangible, patents, trademarks, good will, leaseholds, plant, future acquired property, etc.

The question, then, is whether the power of mortgaging to secure a demand note of all the corporate assets is a power conferred by law upon the stockholders. If not, it was a power which might be delegated to and exercised by the board of directors. We assume for the purposes of this decision, without deciding, that the vote passed was broad enough for that purpose.

Section 40, supra, imports a distinct legislative purpose to increase, not decrease, the rights of stockholders with regard to the sale, lease, or exchange of all the property and assets of their corporation. At common law, a mere majority of the stockholders might authorize the sale or lease or exchange of all the property. Bowditch v. Jackson, 76 N. H. 351, 82 Atl. 1014, L. R. A. 1917A, 1174, Ann. Cas. 1913A, 366, and cases cited; Hall's Mass. Business Corporations, p. 399; Treadwell v. Salisbury Mfg. Co., 7 Gray (Mass.) 393, 405, 66 Am. Dec. 490; 14a C. J. pp. 1083, 1084; Riker, etc., Co. v. United Drug Co., 79 N. J. Eq. 580, 82 Atl. 930, Ann. Cas. 1913A, 1190. Under this statute two-thirds are required. The underlying theory of this section is to reserve to the stockholders questions of fundamental importance. Plainly a mortgage of all the assets and good will of the corporation is far more important than a change of its name, or even a lease of all its property and business. Such a mortgage is potentially a disposal of the entire business of the corporation.

In Massachusetts a mortgage is in terms and legal effect a sale subject to defeasance. Barnard v. Eaton, 2 Cush. 294, 303; Homes v. Crane, 2 Pick. 607, 610. On demand, this mortgage was due as soon as given. It was therefore not a safe and sound debt-funding or capital furnishing device. Its use indicates that the corporation was in extremis and needed the critical attention of its stockholders. Immediate possession taken and maintained for sixty days would foreclose the right to redeem. G. L. Mass. c. 255, §§ 4–7.

We are unable to accord with the court below in holding that such mortgage is not a sale within the meaning of section 40. We cannot adopt his view that the inclusion of the word "mortgage" in section 4 (f), supra, and its omission from section 40, implies that the Legislature intended to vest in boards of directors power to authorize such mortgage as is here in question—a mortgage of all the assets to secure a demand note.

Reading section 4 (f) in the light of its origin, we think the significant words are not the words "to hold, purchase, convey, mortgage or lease"—the ordinary powers of any modern corporation—but are "such real or personal property as the purposes of the corporation may require."

Prior to St. 1903, c. 437, the corporation laws of Massachusetts narrowly and arbitrarily limited the amounts of capital stock issuable and of real and personal property that could be bought or held, as well as the purposes for which corporations could be formed. See Report of the Committee on Corporation Laws (pages 15–20), created by St. 1902, c. 335. Compare, also, R. L. Mass. 1902, c. 110, §§ 4–13.

Under these old provisions, Massachusetts corporations might be formed for various designated purposes, with capital stock varying in

accordance with the designated purposes, but in no case exceeding $1,000,000. The result was, as pointed out in the report of this committee (page 19), that increasingly Massachusetts business was being done by foreign corporations. St. 1903, c. 437, was a new corporation code, intended, inter alia, to authorize Massachusetts corporations to have and to use "such real or personal property as the purposes of the corporation may require," thus freeing such corporations from the old arbitrary limitations. Section 4 (c) contains an analogous enlargement of corporate powers by providing for such amount of capital stock as may be fixed in the agreement of association. In the light of this history, no present significance can be attached to any of the common words "hold, purchase, convey, mortgage, or lease." All ordinary corporations had long had all such powers. 3 Thompson Corps. (2d Ed.) § 2527. But in Massachusetts, prior to the act of 1903, such powers could be exercised only upon narrowly limited amounts of real or personal property. We find no help in the solution of our problem in the inclusion of the word "mortgage" in section 4 (f) and its omission in section 40.

[2] It is plain that a mortgage of all the corporate assets, including the good will, which carries with it the right to the use of the corporate name and "everything of advantage belonging to the existing business relative to the continuance of it" to secure a demand mortgage, is, in its nature, as effective to put the corporation entirely out of its business as an out and out sale, lease, or exchange of all its property. See Moore v. Rawson, 199 Mass. 493, 498, 85 N. E. 586; Lothrop Pub. Co. v. Lothrop, etc., Co., 191 Mass. 353, 355, 77 N. E. 841, 5 L. R. A. (N. S.) 1077; S. F. Myers Co. v. Tuttle (D. C.) 183 Fed. 235. We think that section 40 indicates that the Massachusetts Legislature did not intend to vest such power of life and death in boards of directors alone. The act does not even require that directors shall be stockholders. St. 1903, c. 437, § 18.

The facts of the case now before the court well illustrate the dangers to which minority stockholders may be subjected if the power of the board of directors be unduly extended by construction. Nelson, the president and general manager of the defendant corporation, owned 533 shares out of 1,055 shares of common and preferred stock; both classes having voting powers. He therefore controlled the corporation. He could have elected, and apparently did elect, a board of directors solely of his own choosing. He negotiated and signed the mortgage in question, without the knowledge or assent of the stockholders who owned almost one-half of the stock. This mortgage was not only, as pointed out above, a demand mortgage covering everything the corporation had, but it contained a provision for a 10 per cent. collection fee. It was therefore potentially a mortgage for $27,500, due forthwith. It cannot be assumed that such a proceeding would have commanded the approval of two-thirds of the stockholders at a meeting duly held for the purpose of dealing with the matter or was in the real interest of the corporation. At any rate, the statute contemplates that not less than two-thirds of the stockholders shall know and assent before so vitally—or fatally—important a document shall be executed.

Judicial expression and decision, so far as in point, tend to confirm us in these views.

[3] In Commonwealth v. Smith, 10 Allen, 448, 87 Am. Dec. 672, it was held that a Massachusetts railroad corporation could mortgage its property only on full compliance with the applicable statutory conditions. The court, by Hoar, J., said:

"The power to mortgage can only be coextensive with the power to alienate absolutely, because every mortgage may become an absolute conveyance by foreclosure."

Compare, also, Attorney General v. Boston & Albany R. R., 233 Mass. 460, 463, 464, 124 N. E. 257; Attorney General v. Haverhill Gaslight Co., 215 Mass. 394, 101 N. E. 1061, Ann. Cas. 1914C, 1266; Richardson v. Sibley, 11 Allen (Mass.) 65, 87 Am. Dec. 700.

It is true, as pointed out by learned counsel for the mortgagee, that these are cases dealing with public service corporations, which can have no implied power to cripple themselves for the performance of their public duties. Notwithstanding this distinction, these cases go far in support of the proposition that the power to mortgage is equivalent to the power to sell or lease, and is not to be lightly inferred. Compare England v. Dearborn, 141 Mass. 590, 592, 6 N. E. 837; Kavanaugh v. St. Louis, 220 Mo. 496, 119 S. W. 552.

The only cases cited to us indicating an inconsistent view are three Iowa cases: Middleton Bank v. Dubuque, 15 Iowa, 394; Krider v. Trustees, 31 Iowa, 547; Fuller v. Hunt, 48 Iowa, 163. But in Iowa the legal title remains in the mortgagor, and "the mortgage is but a lien upon the land to secure the payment of the debt" and "lacks the essential element of alienation." 48 Iowa, 166. In Massachusetts a mortgage is a sale subject to a defeasance.

But the Illinois court declined to follow the Iowa cases, stating that it preferred the rule announced by the Massachusetts court in Richardson v. Sibley, 11 Allen, 65, 87 Am. Dec. 700, and consequently held that an Illinois corporation could authorize such mortgage only by vote of the stockholders. See Mannhardt v. Ill. Staats-Zeitung Co., 90 Ill. App. 315, 321; Ladd v. Ladd, 252 Ill. 43, 96 N. E. 561.

So far as expressions in text-books may be taken as evidencing common practice and the general view of the bar and business community, the result is the same. See 8 Thompson on Corporations (Ed. 1908) §§ 2527, 6158; 10 Fletcher, Corporations, Supp. 1921, §§ 1266, 1276; Clark on Corporations (3d Ed.) p. 167; Hall's Mass. Business Corporations (3d Ed.) pp. 73, 339; 14a C. J. p. 548. Compare Karasik v. People's Trust Co. (D. C.) 252 Fed. 324, 334.

The general rule plainly is that the power to mortgage can only be coextensive with the power to alienate absolutely. It is not and cannot be contended that the directors of the Nelson Company had power to alienate absolutely all the assets and good will of the company. Applying the rule, this mortgage—a defeasible alienation of all its assets —was bad.

We limit our opinion strictly to the issue in this case—the validity of a mortgage of all the assets. The record does not involve, and we intimate no opinion on, the question as to whether the directors of a

Massachusetts business corporation may, without a vote of two-thirds of the stockholders as required under section 40, supra, mortgage less than all of the property of the corporation.

It is hardly necessary to add that our decision is without prejudice to any right the Commerce Trust Company may have to prove its claims and to share as an unsecured creditor in any assets available to general creditors.

Our conclusion that there was no valid mortgage effectively disposes of the contention made by the Commerce Trust Company, in No. 1560, that its alleged possession taken in foreclosure proceedings under this mortgage grounded a valid lien to secure earlier notes. In that matter we reach, though by a different road, the same result as did the court below.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and costs in this court are awarded against the Commerce Trust Company in both appeals.

## On Petition for Rehearing.

[4] The Commerce Trust Company petitions for rehearing, on the ground that the court overlooked its contention that the corporation is insolvent, that the receivers therefore, as is argued, represent only creditors, and that creditors cannot attack the mortgage for lack of a stockholders' vote. This point was not overlooked; but the court did not, and does not, regard it as open on the record before us. On what ground the receivers were appointed does not explicitly appear; but the presumption is that they were appointed because the corporation, though embarrassed, was solvent, and not insolvent. If insolvent, it belonged in bankruptcy, and not in a court of equity. In the trust company's petition to establish liens on the proceeds of property sold there is no allegation that the corporation was insolvent. In the court below the receivers were treated as representing the corporation, its stockholders, and all other interests claiming under or through it. The District Court and this court both dealt with the validity of the mortgage as a question to be determined under the Massachusetts statutes. But the contention now made—if sound and supported by the facts—would have rendered irrelevant the elaborate consideration given by both courts to the Massachusetts statutes and to cases interpreting analogous enactments. It is too late now for the trust company to shift its basic position, and ask this court to rule in its favor on a ground not suggested in the court below or brought to this court on any assignment of error; the trust company's assignments of error on its appeal nowhere suggest either insolvency or that the receivers had no standing to attack the invalidity on any ground open to stockholders.

Without more, it is manifest that on such a record we have no occasion to discuss the doctrine illustrated in Westerlund v. Black Bear Mining Co., 203 Fed. 599, 612, 121 C. C. A. 627, et seq., where Judge Sanborn has cited and discussed many authorities.

Petition denied.