# WILLIAM K. KAVANAUGH, Trustee, v. CITY OF ST. LOUIS, Appellant.

### In Banc, May 22, 1909.

1. **CORPORATION: Alienation of Franchises: Mortgage.** Without statutory authority a corporation has no right to alienate its franchises, and to mortgage its property is in law an alienation of its property; and the ordinance granting the franchise must be strictly construed against the holder of the franchise.

2. ———: ———: **Express Statutory Authority: Ordinance Franchise: City as Agent.** Sec. 706, R. S. 1879, declaring that "every corporation, as such, has power to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require," etc., was express statutory authority to a street railway company organized in 1888 to mortgage its properties, including its franchises to construct and operate railways in the streets derived directly from the city, for such franchises are property, and really come from the State through its authorized agent, the city.

3. ———: ———: **To Foreign Ferry Corporation: Street Railway: Held by Trustee.** Corporate powers and rights cannot always be judged by corporate names; and where the individual plaintiff charges that he was a trustee of an express trust, without naming the owner of the beneficial interest, and no objection was made to the pleading in that form, and the beneficial owner is disclosed only by the evidence to be the Wiggins Ferry Company, a foreign corporation, and its corporate powers are not disclosed either by the pleadings or proof, it will not be adjudged that the ferry company had no legal right to hold a beneficial interest in the street railway properties which were deeded to plaintiff as trustee.

4. ———: ———: **Constitutional Prohibition: Assent of City: Not Negatived by Pleading or Proof: Presumption.** The Constitution (Sec. 20, art. 12) forbids the transfer of the franchise right to construct and operate a street railway granted by the city, without the city's assent thereto, and that prohibition applies to a transfer by mortgage or deed of trust; but where the transfer was actually made, and plaintiff's bill of injunction to restrain the city from removing the street railway from its streets sets forth the ordinances granting the company the right to construct such street railway and all subsequent transfers of its properties, and the city, in its answer to that

bill, pleads only an abandonment of the franchise rights and does not plead the invalidity of the transfers, the issue of the assent of the city is not in the case; and there being no showing that the city's assent was not obtained, it will be presumed that it was obtained by municipal act prior to the transfer. Acts done by a corporation which presuppose the existence of other acts to make them legal and operative are presumptive proof of the latter. [Following Chlanda v. St. Louis Transit Co., 213 Mo. 1. c. 262.]

5. ———: Abandonment of Franchise: Forfeiture in Equity Suit. The evidence in this case shows an abandonment and non-user of the street railway franchises granted by the city, which is a ground for forfeiture in a law case. But a forfeiture cannot be declared in an equity suit, for instance, upon the city's cross-bill to plaintiff's injunction to restrain the city from removing the company's tracks, poles, etc. The city in granting the franchise to the street railway company was simply acting as an agent of the State, and the franchise really emanated from the State, and the company's charter can be forfeited only in a direct proceeding in *quo warranto*. The city has no judicial power to declare a forfeiture; and in the injunction suit, brought by the street railway company, to restrain the city from taking possession of the railway tracks, a judgment should be rendered for plaintiff, although the abandonment by non-user is clearly established.

*Held*, by VALLIANT, J., dissenting, that it does not require the judgment of a court to create a forfeiture, but it results from the operation of law, and immediately when the party whose right is forfeited has done or permitted the act by which he loses his right, and the other party need not wait until he can obtain a judgment of forfeiture before he acts on the assumption that a forfeiture has resulted in his favor. If his assumption is correct and he takes possession of the forfeited property, he is not liable for damages; and if his assumption is incorrect and he acts, he is liable for damages. There is no pretense that the city is insolvent, and not able to respond in damages for any injury done the street railway company, and a court of equity, though it has no power to declare a forfeiture, should not interfere in behalf of a company which has apparently abandoned its franchise and forfeited its right to maintain an obstruction in the street and which shows no equitable considerations why the law should not be allowed to take its course, but should dismiss plaintiff's bill, and leave the parties to their legal remedies.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Charles W. Bates* and *Charles P. Williams* for appellant.

(1) The grant of the right of way in this case was to the Fourth Street and Arsenal Railway Company, and to no one else. (2) Under the general law of this country, such grants made to a corporation are not assignable without express statutory authority. Such grants are to be strictly construed. Snell v. Chicago, 152 U. S. 199; 26 Am. and Eng. Ency. Law (2 Ed.), 672; Endlich on Interpretation (Ed. 1888), sec. 354; Elliott on Railroads, sec. 488; Wood on Railroads (1894), sec. 455; Short on Railway Bonds (1897), sec. 142; Com. v. Smith, 92 Mass. 455; State ex rel. v. Railroad, 140 Mo. 549; Moorshead v. Railroad, 203 Mo. 148; Hovelman v. Railroad, 79 Mo. 643; Jackson v. Railroad, 87 Mo. 422; Scharff v. Meyer, 133 Mo. 428; State v. Clinton, 67 Mo. 380; Coe v. Railroad, 10 Ohio St. 372; Railroad v. Oregonian Co., 130 U. S. 1. (3) Under the constitutional, statutory and charter provisions applicable to the city of St. Louis there has been vested in that city the right to pass on the construction, operation or transfer of any street railroad whatsoever. The city has never given its consent to the transfers in this case. Hence, as against the city, these transfers are invalid. State ex inf. v. Railroad, 151 Mo. 185; Constitution, art. 12, sec. 20; Railroad v. Kirkwood, 159 Mo. 252. (4) The trial court absolutely misunderstood one of the most substantial issues before it, namely, abandonment. It was the position of the court, made manifest by his rulings, that he was going to issue an injunction regardless of that question; and that the only way the city could raise that question was by *quo warranto,* though he admitted the right of the city to keep its street free from nuisance. McLain v. Railroad, 90

Iowa 648; Muhle v. Railroad, 86 Tex. 464; Hastings v. Railroad, 38 Iowa 318; Henderson v. Railroad, 21 Fed. 368; Roanoke Inv. Co. v. Railroad, 108 Mo. 67; State ex rel. v. Railroad, 140 Mo. 552; Bell v. Tunnel Co., 36 Cal. 214. This amounted to prejudicial error. American Brewing Co. v. St. Louis, 209 Mo. 610. (5) It is fixed and unalterable doctrine of equity jurisprudence that a plaintiff who comes into a court of equity seeking relief must be prepared and willing to do equity, and that he must come into court with clean hands with respect to the particular right upon the violation of which his claim is based. 16 Cyc. 144. The plaintiff in this case has been guilty of repeated and long-continued violations of the charter rights he here asserts. He has, with respect to them, been guilty of unlawful and inequitable conduct. He should therefore be left to his remedies at law. Furthermore the decree was erroneous in not laying upon plaintiff any duty whatsoever, and not compelling him to do equity. (6) The evidence will convince any candid reader that the Wiggins Ferry Company never intended to operate the right of way in question in this case. Upon the evidence with respect to a public grant of this character, the finding should have been for the city.

*Watts, Williams & Dines* for respondent.

(1) The rights of street railways in the streets of a municipality are franchises; they are vested rights which may be mortgaged and sold by the company owning them. Hovelman v. Railroad, 79 Mo. 643; State ex rel. v. Railroad, 140 Mo. 539. The right to mortgage these franchises as well as other property has been expressly recognized by the Legislature. Sec. 706, R. S. 1879. And the right to transfer such franchises is recognized by art. 12, sec. 20, of the Constitution, when assented to by the municipal authorities. This assent is not required to be in any

particular form; it need not be by ordinance; it may be implied from conduct, circumstances and course of dealing; or the city may be estopped by its conduct, from asserting the lack of its assent. The lack of such assent is not pleaded in either answer or crossbill; and it is claimed and asserted by respondent as trustee for The Wiggins Ferry Company, that his and its right to hold and own said franchises after mortgage foreclosure thereof cannot be assailed or tried in the present proceeding. (2) These rights having become vested under the Constitution and statutes of the State of Missouri and the ordinances of the city of St. Louis, can only be forfeited in a *quo warranto* proceeding brought by the State for that purpose. State ex rel. v. Railroad, 140 Mo. 539; Railroad v. Easton, 133 Pa. St. 505; Railroad v. Memphis, 96 Fed. 113; Railroad v. Railroad, 110 Fed. 879; Railroad v. Milwaukee, 36 L. R. A. 45; Bruffet v. Railroad, 25 Ill. 353; Railroad v. Wilson, 22 Conn. 435; Sturgis v. Vanderbilt, 73 N. Y. 384; Re N. Y. Elevated R. Co., 70 N. Y. 327; Railroad v. Long Branch Comms., 39 N. J. L. 28; Railroad v. Erie, 27 Pa. 380; Railroad v. Lawrenceburgh, 56 Ind. 80. (3) The State may waive the conditions or enforce them, when the continued life of a corporation is made to depend upon performance of a condition subsequent. The non-performance of the condition is not an *ipso-facto* forfeiture, but is a mere ground of forfeiture of which the State can avail itself by proceeding in *quo warranto,* or which it can waive at pleasure. Railroad v. Railroad, 110 Fed. 879; Gas Light Co. v. Gas Co., 40 N. J. Eq. 432; U. S. v. Railroad, 177 U. S. 435. (4) The city of St. Louis, having arbitrarily interfered with the repair and operation of the street railway, and having wilfully torn down and destroyed a portion of its poles and wires, cannot, as a defense to respondent's proceeding in equity to prevent further interference and

destruction, set up and enforce the claim that respondent and its predecessors have lost their rights by abandonment and non-user. Railroad v. Railroad, 110 Fed. 879; Railroad v. Milwaukee, 36 L. R. A. 45. (5) A bill in equity for injunction has always been regarded by the authorities as the proper proceeding to prevent interference with rights of the nature here involved, whether such interference is by the municipality or by others. Vicksburg Water Works Co. v. City of Vicksburg, 185 U. S. 65; Railroad v. Railroad, 38 Pac. 986; Los Angeles v. Water Co., 124 Cal. 377, 57 Pac. 213. Such rights cannot be illegally or arbitrarily taken. Bridge Co. v. Dix, 6 How. (U. S.) 507; Water Supply Co. v. Brooklyn, 166 U. S. 685; Railroad v. Wilmington Co. (Del.), 46 Atl. 12; Railroad v. Railroad, 62 Ill. App. 502; Railroad v. Chicago West Div. Co., 87 Ill. 317. (6) A municipality may be estopped to the same extent as an individual by conduct inconsistent with the assertion of a forfeiture upon condition subsequent broken. Trust Co. v. Duluth, 70 Minn. 257, 73 N. W. 249. (7) Abandonment of an eastment acquired by grant must be supported by acts of an "unequivocal nature indicating a clear intention to abandon." Insurance Co. v. Railroad, 108 Mo. 50; State ex rel. v. Railroad, 140 Mo. 539; Curran v. Louisville, 83 Ky. 628; Dyer v. Sanford, 9 Metc. 395; Hayford v. Spokesfield, 100 Mass. 491. And "a proceeding in equity is not the proper remedy to enforce the forfeiture of a franchise." State ex rel. v. Railroad, 140 Mo. 539.

## IN BANC.

PER CURIAM.—Upon consideration of this case the opinion of GRAVES, J., in Division No. 1, is adopted as the opinion of the Court in Banc. All concur, except VALLIANT, C. J., who dissents in separate opinion.

Judgment affirmed.

## IN DIVISION ONE.

GRAVES, J.—This is an action for injunction tried in the city of St. Louis. The plaintiff, William K. Kavanaugh, claims to be the trustee of an express trust for the Wiggins Ferry Company, an Illinois corporation. The suit is against the city of St. Louis, and its street commissioner and its superintendent of city lighting. The facts pleaded and proven by plaintiff are these:

Prior to April 13, 1888, the Fourth Street and Arsenal Railway Company was a duly incorporated street railway company under laws of Missouri. By city Ordinance 14485, passed on said last-mentioned date, the said city of St. Louis authorized said street railway company to build a street railway in and along certain streets in said city. Said ordinance was accepted and the railway built. Said street railway company executed later, but very shortly thereafter, a deed of trust covering all of its said property, including its franchise, in which deed Charles Parsons was made trustee. This instrument was to secure the payment of $50,000 in bonds at the time issued by the company. Under this deed, owing to default having been made, a sale was had in September, 1898, and said property was bought by John H. Overall, to whom a trustee's deed was made. Very shortly thereafter, within a few days, Overall and wife conveyed the property to John Scullin, who in September, 1903, being joined therein by his wife, conveyed to the present plaintiff. Upon the receipt of his deed Mr. Kavanaugh made and executed a trust agreement with the Wiggins Ferry Company, of which he was at the time president. In said instrument it is recited that the consideration was paid by the said Ferry Company and not by Kavanaugh, together with other proper recitals for such an instrument. It is averred that on

January 30, 1905, the said Kavanaugh intended to immediately run street cars upon said streets, and that he so intends to do still. It is averred and shown that on said last-named date, the city, through its said officers, threatened to remove its poles, wires and rails from the streets and the evidence so shows. In fact the city did remove a quantity of the wires. A temporary injunction was granted, which upon trial was made permanent.

By answer the defendants charged: 1. That by section 6 of Ordinance 14485, the railway company was required to run cars at intervals of five minutes between 6 o'clock a. m. to 12 o'clock p. m. each and every day of the year. 2. That it was by section 5 of the city ordinance required to keep the space between the tracks and for twelve inches on each side in complete repair and condition with the same or better material than that used upon the remainder of the street. 3. That by Ordinance 21113, dated April 6, 1903, it was required to operate its cars as in ordinance specified on each and every day. 4. That since 1896 the said railway company wholly failed to run any cars upon said streets over its said lines, or otherwise exercise any rights, privileges or franchises theretofore granted; that it failed to take out license so to do as required by ordinance. 5. That since 1896, although frequently notified, said railway company and all of its assigns wholly failed to keep in repair the space between its rails and on the sides thereof as required by ordinance. 6. That said company and assigns paid no attention to the roadbed, poles, wires or apparatus, and neglected and refused to attend to same, or repair the same, and allowed such to fall into decay, disuse and dilapidation, which made the streets dangerous and unsafe to the public and for public use and travel. 7. That said company and assigns refused and failed to take or claim said tracks, rails, poles and wires when notified by the city that

they were a menace to the safety of the people and property along the streets, although informed that the city would have to remove them. 8. That owing to the failure of said company and its assigns, the city was compelled to and did macadamize said streets and did cover up the tracks and this without protest from either the company or its assigns. 9. That instead of using the trolley wires for street railway purposes, they were permitted to be used by the Edison Electrical Illumination Company of Carondelet for distributing electricity for illuminating purposes, and thereby the company permitted the same to become a nuisance and a danger to the lives of persons traveling on the street. The answer then thus concludes:

"Defendants aver that by reason of the premises the said company and its alleged successors and assigns, including the plaintiff, have long ago abandoned and lost all rights, privileges and franchises obtained under said ordinances, and have repudiated all obligations, thereunder, and have abandoned and lost all its tracks, wires, poles and other apparatus pertaining to its former street railway, and have repudiated all obligations thereunder; and have not now, and have not had for years, any property of any kind or nature necessary for the operation of a street railway.

"Defendant further avers that neither the plaintiff nor said railway company, or its assigns, now have, or for the past eight years have had, any intention, nor have they or any of them made any efforts, to operate a street car railroad over the streets mentioned in plaintiff's petition.

"Wherefore the defendant prays that the relief prayed for by plaintiff be denied.

"And for cross-bill, defendants herein, alleging all the matters and things by them alleged in their defense above set forth, and incorporating the same herein as a cross-bill, and as a basis for affirmative

relief, pray the court to decree that said railway company and its assigns, the plaintiffs, and those for whom the plaintiffs hold, have abandoned all their rights, privileges and franchises granted said Fourth Street and Arsenal Railway Company, and all the tracks, wires, poles, and other apparatus now or formerely on said streets of the city of St. Louis.''

By way of reply and answer to the crossbill the plaintiff says that the question raised by defendant's answer can only be raised in a *quo warranto* proceeding on the part of the State. He then pleads by way of estoppel *in pais,* that at the request of and with the knowledge and consent of the city, he as trustee had expended large sums of money in paving streets along the line of street railway.

That the line had not been operated at all for some years is practically conceded. In fact it is shown that in a *quo warranto* proceeding in this court in 1904, the plaintiff consented to the following judgment of ouster:

''Now at this day come the said parties by attorneys and upon their stipulation, it is considered and adjudged by the court that the said respondent, William K. Kavanaugh, be, and is hereby ousted from having, maintaining or using any franchises or rights to run or maintain any street railroad or railway, in or over the following streets of the city of St. Louis, Missouri, viz.:

''Beginning in Fourth street at its intersection with Morgan street, thence running northwardly along Fourth street and Third street near Carr street; and that said appellant recover against the said respondent, William K. Kavanaugh, its costs and charges herein expended, and have therefor execution.''

This is a part of the original line conveyed to Kavanaugh. The city substantially proved every charge in its answer by evidence both strong and convincing. It shows that not a car has been run for

six or eight years; that for a similar period large portions of the track were covered by macadam two to five inches deep; that during said time the pavement between the rails and on the outside thereof to the distance of twelve inches had been neglected, except where the city had repaired the same; that during said time the feed and trolley wires had been so neglected that they had to be cut for long distances because they sagged and fell to the street in such manner as to imperil the safety of persons traveling thereon; that during 1904 sundry notices were sent out to Kavanaugh and the railway company, both by the street commissioner's office and the superintendent of city lighting, calling attention to the condition of the tracks and of these wires, which notices were ignored.

Plaintiff had some evidence tending to show that the notices were heeded and repairs were made. Plaintiff also showed that in 1905, shortly before this suit, he paid on one paving bill for Dorcas street $770 and another bill of $251. No attempt is made by plaintiff to show that cars were run on the tracks and wires kept in condition to run a street railway during all this period.

By decree the court permanently enjoined the defendants and each of them and their respective agents and employees, ''from taking up or removing any of the ties, rails, switches, poles or wires formerly belonging to the Fourth Street and Arsenal Railway Company and now belonging to the plaintiff as trustee for the Wiggins Ferry Company, and from interfering with the plaintiff as such trustee from replacing and repairing the said ties, rails, switches, poles and wires, and from interfering with plaintiff as such trustee in using and operating the same for street railway purposes, and ordering and adjudging that the cross-bill of defendants be dismissed, and that the costs of

the proceedings be adjudged against the defendants, and that execution issue therefor.''

From this decree, after unsuccessful motion for new trial, the defendants appeal. In the brief counsel for defendants say:

''The defendants below insisted that the Wiggins Ferry Company, a corporation of the State of Illinois, had no right to acquire the right of way along the said streets granted to the Fourth Street and Arsenal Railway Company, because, in the first place, such Illinois Company had no power to own and operate such franchise; in the second place, the attempted transfers were void by virtue of the general law; in the third place, such transfers were void as being made in fraud of and without the consent of the city of St. Louis; in the fourth place, the Fourth Street and Arsenal Railway Company had, for a period of eight or ten years, persistently violated every duty assumed by it in its charter and imposed by the charter and ordinances of the city of St. Louis; it, as well as its pretended successors and assigns, had physically abandoned the franchise and right of way along the public streets, and they had no intention of ever operating a street railway as provided for in their franchise along the said right of way in the streets mentioned; consequently they had abandoned the said right of way which reverted *ipso facto* to the city.''

This states the contentions here as briefly as we could put them. In the record are found all the conveyances and ordinances mentioned. This sufficiently states the case and the contentions.

I. The first question in importance is to determine whether or not the Fourth Street and Arsenal Railway Company had any power to mortgage the franchises granted to it by the city, under Ordinance 14485. The first section of that ordinance reads: ''The Fourth Street and Arsenal Railway Company, its suc-

cessors and assigns, are hereby authorized to acquire the Tower Grove and Lafayette Railroad from the owner or owners thereof.'' The property mentioned in this section is not involved in this suit.

The rights here involved are those conveyed by section 2, of said ordinance, the material portion of which reads: ''Said Fourth Street and Arsenal Railway Company is hereby authorized to construct, maintain and operate a railroad to be operated by horse-power, or by cable laid underground, or by electricity supplied by storage batteries carried on the cars, in and along the following streets, that is to say, . . . And so soon as the streets shall have been graded and put in suitable condition to permit of the operation of the same, the said company shall have the right to extend the single track of its railroad in Third street, south from said Anna street to Dorcas street; thence east, with a single track, in Dorcas street to Second street; thence north, with a single track in Second street, to Anna street, and to a junction with its track in Second street north of Anna street. With the right also in said company to lay all necessary tracks into and out of its carsheds and other buildings located at the northwest corner of Second and Victor streets.''

The description of the streets and lines to be constructed we have omitted, but they cover the property rights in dispute. It will be noticed that as to the rights granted in the first section the words ''its successors and assigns'' are used, whilst as to the rights granted under the second section no such words are used, and this is the bone of contention. Defendants contend that the deed of trust made by the railway company as to the franchises mentioned in section two is void, and the subsequent sale and transfers thereunder void. If this be true, plaintiff has no standing in court.

By the articles of association, introduced in evidence, it appears that the "Fourth Street and Arsenal Railway Company" was incorporated in January, 1888. In the same year the franchise from the city was granted, and in the same year the deed of trust was executed covering such franchises and other property. It must be conceded that without statutory authority a corporation has no right to alienate its franchises, and it must be further conceded that the ordinance granting the franchise must be strictly construed as against the holder of the franchise. It must be further conceded that to mortgage the property is in law an alienation of the property.

That without statutory authority a corporation cannot alienate such franchises as are involved in this case, is determined by the following authorities: Snell v. Chicago, 152 U. S. 191; Com. v. Smith, 92 Mass. 448; Coe v. Railroad, 10 Ohio St. 372; Wood on Railroads (2 Ed.), sec. 455; Short's Law of Railway Bonds and Mortgages, sec. 142; Moorshead v. Railroad, 203 Mo. l. c. 148.

That the ordinance or law granting such franchise must be strictly construed is equally certain. [Endlich on the Interpretation of Statutes (Ed. of May 1, 1888), sec. 354.]

So also that mortgaging is an alienation is fully decided. This for the reason that such an instrument may culminate in the absolute alienation of the property. *Vide* cases cited supra. Also 1 Elliott on Railroads, sec. 488, whereat it is said: "Railroad bonds are usually secured by mortgage or trust deed, and mortgages are frequently executed for other purposes as well. As a railway company receives from the State special privileges because of its public purpose, and has public duties to perform in person, and as a mortgage may become in effect an absolute conveyance or result in a sale by foreclosure, such a company cannot, without legislative authority, mortgage its franchises

and property essential to their exercise. This rule is not, however, applicable to property which is not essential to or of use in the fulfillment of the corporation's public purpose and not necessary to enable the company to perform its duties to the public.''

But at the time this corporation was organized we had an express statute authorizing it to mortgage its property, i. e., section 706, Revised Statutes 1879. This statute, so far as applicable to the point in issue, reads: ''Every corporation, as such, has power . . . fourth, to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter or the law creating it, and also to take, hold and convey such other property, real, personal or mixed, as shall be necessary or requisite for such corporation to acquire in order to obtain or secure the payment of any indebtedness or liability belonging to the corporation.''

Under this statute we have expressly held that such corporation had the right to mortgage its property, including the franchise, which is property. [Hovelman v. Railroad, 79 Mo. l. c. 643.] In this case we said: ''It is also argued that the Union Depot Horse Railroad Company had no power to mortgage its right of way, and that, therefore, Dye, who purchased the right of way at the sale made under the deed of trust or mortgage, could not and did not acquire said right, and that consequently his deed to defendant was inoperative to convey the same to defendant. This position we think is answered by section 706, Revised Statutes 1879, which, among other things, provides that 'every corporation, as such, . . . has power to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation may require, . . . and also to take, hold, and convey such other property, real, personal and mixed, as shall be necessary for such cor-

poration to acquire in order to obtain or secure the payment of any indebtedness or liability belonging to the corporation.' The right of way acquired over Eighteenth street was an incorporeal hereditament, and, therefore, property, and the right to mortgage it was full and complete under the statute. The cases to which we have been cited as to the vendibility of a corporate franchise—that is, the right to be, have no application to the vendibility of a property right, the sale or mortgage of which is expressly authorized by statute.''

And we have further held that such franchises really come from the State through its authorized agencies. [State ex rel. v. Railroad, 140 Mo. l. c. 550.] In the latter case, we said: ''This court has recognized the rights of street railways in the streets of a municipality as franchises and as vested rights which might be mortgaged by the company to whom the franchise belonged. [Hovelman v. Railroad, 79 Mo. 643.] While the franchises involved in this controversy were derived directly from the city by the East Fifth Street Railway Company, under ordinances passed under the grant of power contained in the city charter, that power was conferred upon the city by the General Assembly, so that the power came indirectly from the State, and in granting it the State acted through the city as its agent. [Transportation Co. v. Chicago, 99 U. S. 641; Port of Mobile v. Railroad, 84 Ala. 119.] The power of the city to grant the franchises in question is unquestionable.''

So that under the laws of this State, whatever it may be elsewhere, we are forced to the view that the railway company had the general right to mortgage, as it did, the property rights granted to it by the city of St. Louis, and having such right, John H. Overall had a right to purchase and thereby acquire a good title. The limitation of this right, if such there be, will be discussed in another paragraph. There is no

testimony that either Overall or Scullin held the property in trust for the Wiggins Ferry Company except the statement of Kavanaugh to that effect: ''I became conversant with the affairs of the Fourth Street and Arsenal Railway Company when I became president of the Wiggins Ferry Company and about nine or ten months afterwards I became trustee for it. Prior to December 12, 1904, the date of this resolution, I think Mr. Scullin held the franchise of the company in trust, the same as I do for the Wiggins Ferry Company.''

However this is a question to be determined later, and not at all necessary to the point now under consideration, i. e., whether or not the railway company had the broad right to mortgage this property. As to this question we hold that it had such right, subject to the views hereinafter to be expressed upon certain limitations upon the broad statutory rights.

II. It is next contended that the ferry company, an Illinois corporation, has no legal right to hold the beneficial interest in this property. This point is not briefed nor argued by counsel and presumably has been abandoned. The petition charges that the plaintiff was a trustee of an express trust, without stating who had and held the beneficial interest. No motion was made to require such petition to be made more specific. Answer was filed without raising the question, and it remained for the evidence to disclose the actual beneficial owner. By motion to make more specific defendants could have complained that the beneficial owner was not named. If the court had sustained such motion, as it no doubt would have done, the defendants could have pleaded, as they did not do, the fact that such beneficial owner, in law, could not hold the property. Neither by pleading nor proof are we advised as to the corporate powers of the Wiggins Ferry Company. Its charter is not before

us, and as to its powers and rights we cannot judge. Corporate rights and powers cannot always be judged by corporate names. It therefore appears to us that there is no substantial merit in this contention under the State of the record herein above disclosed. We take it that counsel reached the same conclusion, if we are permitted to judge their conclusions from the brief filed.

III. But it is earnestly insisted that these transfers, having been made without the assent of the city, are void, notwithstanding the statute, section 706, Revised Statutes 1879. This statute places no limitation upon the right to alienate or mortgage, which latter as we have seen is of itself an alienation. Defendants insist that there is a constitutional provision which limits the broad terms of the statute. This provision is section 20 of article 12, Constitution of 1875. This provision was in full force and effect when the franchises were granted, when the mortgage was made, and when the sale was made under the mortgage. The constitutional provision reads: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained."

The latter clause, "and the franchises so granted shall not be transferred without similar assent first obtained," is the one relied upon by the defendants. They urge that this provision of the Constitution was not considered in the case of Hovelman v. Railway, *supra,* and in this we think defendants are correct. That case only discusses the statute, but does not dis-

cuss the limitations placed thereon by the Constitution. It may have been that the ordinance granting the franchise in that case used such appropriate words as would amount to an assent upon the part of the municipality. Without the limitation contained in this provision of the Constitution, this statute gives an absolute right to mortgage the franchises involved in this case as fully discussed in paragraph one of this opinion. But defendants, while urging that there was no right to mortgage, because the words "successors and assigns" do not appear in the grant made by section 2 of the ordinance, now further contend that, even if there was the power to alienate the franchises granted by section 2 of the ordinances, under section 706, *supra*, yet the Constitution places a condition upon the power, *i. e.*, the assent of the city. Whilst under a statute of this character, we think the franchises were alienable and subject to being mortgaged, as discussed in our paragraph one, but a different question arises when we consider the constitutional limitations imposed. This question we have reserved for this point made in the brief, *i.e.*, the point that no city assent was shown. Statutes must be construed in the light of the Constitution. So construing this statute, we are of the opinion, (1) that conveying by deed of trust in law is a transfer of the franchises, and (2) that such transfer cannot be made without the assent of the city. The authorities cited under paragraph one show that mortgaging is an alienation, sale or transfer of the rights and property mortgaged, because liable to be made a transfer absolute, by sale under the mortgage. So that we conclude that municipal assent is required for the transfer of such franchise rights as are involved here, and that a deed of trust or mortgage is such a transfer. But we must look to the pleadings for the issues in this case. The plaintiff pleads Ordinance 14485, the incorporation of the railway company, the deed of trust

and all subsequent transfers of the property. The city is a party and had full knowledge whether or not assent was given to these transfers. This assent might have been given by the use of the words "successors and assigns" or similar words in the original grant, or it might be given by subsequent municipal act. Nowhere in its pleadings does the city raise the question of the invalidity of these transfers for want of municipal assent. The theory pleaded and proven below was that there had been an abandonment of the franchise rights by the railway company and its assigns. Had the city desired to raise that question it should have so indicated by its pleadings. When the plaintiff pleaded the deed of trust, as he did, the city could have said by answer, "It is true that such a transfer was made, but it was not made with the assent of the municipality, and is therefore void." Such issue was foreign to the mind of the pleader at that time. It is true that when the deed of trust was offered counsel did say: "Defendants object to the deed of trust on the ground that the Fourth Street and Arsenal Railway Company had no authority in law to enter into a document or agreement of this character, because it is prohibited by section twenty of article 12 of the Constitution of Missouri."

This objection is vague and indefinite. Counsel may have had in mind that no municipal assent had been obtained, but why not so say in the pleading and likewise in the objection. When it appeared that the railway company had in fact made the deed of trust, the presumption arose that all things necessary had been done to make it valid, *i. e.*, that municipal assent had been obtained. Discussing a similar question, this court, through LAMM, J., in Chlanda v. Railroad, 213 Mo. l. c. 262, said: "In other words those artificial persons, yclept corporations, are entitled to a presumption of duty well done until the contrary appears, the same as a natural person. A presumption

therefore arises that the United Railways Company had the right to do what it did do, to-wit, make that lease, and this presumption fairly includes a municipal assent first obtained. It is rebuttable, but here there is no effort to rebut it. The premises considered, we conclude not only that the Moorshead Case settles the proposition in hand as an authority in point, but that 'under the peculiar facts of this record there is no substance in the point on the reason of the thing.'' And in the same case with reference to this presumption: ''Moreover, defendant's learned counsel maintain the proposition that acts done by a corporation which presuppose the existence of other acts to make them legal and operative are presumptive proof of the latter. They invoke such proposition and presumption in this case. We think the proposition sound and that they are entitled to the presumption.'' [State ex rel. v. Kupferle, 44 Mo. l. c. 158, 100 Am. Dec. 265; American Ins. Co. v. Smith, 73 Mo. l. c. 371; Chouteau v. Railroad, 122 Mo. l. c. 384, 385, 22 S. W. 458, 30 S. W. 299.]

In this case the defendants not only fail to plead the want of assent, but when the deed of trust is read and the other conveyances are read in evidence, thus raising the presumption above discussed, they do not by proof undertake to rebut the presumption. So that we conclude that the want of assent is not sufficiently pleaded or shown.

The case was tried upon a wholly different theory below. Abandonment was the slogan there, and so it must be here.

IV. It is next contended that the evidence in this case shows an abandonment and non-user of the franchise granted by the city for eight to ten years. The evidence does so show. Whilst there is some slight proof tending to show repairs, as against a mass of proof upon the same subject offered by defendants,

yet there is no contention that plaintiff or his predecessors in title made any attempt for eight to ten years to run street cars as required by the grant. The trial court evidently went off on the proposition that abandonment was simply a ground for forfeiture of charter rights, and that the question of forfeiture could not be tried in this, an equity case. Plaintiff now insists that advantage of forfeiture can only be taken in a *quo warranto* proceeding instituted either at the instance of the State or the city. In other words, plaintiff contends that even though there has been such non-user of the franchises as would authorize a court in a proper proceeding to declare a forfeiture, yet the city cannot so declare by its own act and reassume the franchise privilege theretofore granted. If this were a *quo warranto* proceeding asking a forfeiture for non-user, we would have no hesitancy in finding that there was gross non-user under this evidence, and that forfeiture should be found, and the charter rights annulled. But can it be done in this, an equity proceeding, wherein we have a cross-bill, itself an action in equity? We think not, and in this the trial court was right.

In State ex rel. v. Railroad, 140 Mo. l. c. 550, we held that a franchise of this character, whilst granted by the city, was in fact granted by the State, through the agency of the city; that in granting such a franchise the State acted through the city. We there cited Transportation Co. v. Chicago, 99 U. S. 641, and Port of Mobile v. Railroad, 84 Ala. 119, as supporting the doctrine. Many other cases might be cited. Thus, in Railroad v. City of Memphis, 96 Fed. l. c. 121, TAFT, J., said: "When, therefore, the taxing district of the county of Shelby made a contract with the complainant company by which it secured to that company for fifty-five years occupancy of Kentucky avenue, it was acting as an agent of the State, and as a trustee of the public at large. When now the city of

Memphis, as the successor of the taxing district, comes
to assert the rights secured to it by that contract, it
is asserting the rights of the State and of the public at
large as a State agent.''   And again, in a case wherein
there was an abandonment of the use of street rail-
ways tracks for five yers, the Supreme Court of Wis-
consin, in the case of Railroad v. City of Milwaukee, 36
L. R. A. l. c. 46, said: ''Practically, the only question
remaining in the present case is whether the city can
successfully maintain an action in equity to prevent
the relaying of the tracks on account of the non-use of
the street for nearly five years.   It will be readily
seen that, if it can do so, the action will be practically
an action brought to declare a forfeiture of the fran-
chise to operate a railway upon that piece of street.
This question can be answered logically in but one
way, and that is in the negative.   The franchise was
the grant of the State.   It was granted through the
medium of the city, but, in making the grant, the city
exercised the power of the State, and acted on its
behalf.   While the State has delegated to the city the
authority to grant franchises of this character, it has
not granted to the city the power to institute and main-
tain an action to forfeit the franchise for misuse or
abuse.''

If then, as we hold, the franchises are granted by
the State through the agencies of the cities, in our
judgment a direct proceeding in *quo warranto* is the
remedy.

In the brief of counsel in the case of State ex rel. v.
Railroad, 140 Mo. l. c. 541, it was urged that such con-
tracts should be canceled in a proceeding in equity.
In support of his contention learned counsel cites some
of the cases cited by counsel for defendant in this case.
In that case, learned counsel press the question in this
language in their brief:   ''The ordinances set out in
the information are simply contracts between the
relator and the defendant, in which the State has no

interest whatever, and may be canceled by a court of equity at the instance of the relator without the intervention of the State. . . . An information in the nature of *quo warranto* cannot be maintained to divest a corporation of its property rights, whether such rights were obtained by municipal ordinance or other contract.''

The doctrine of State ex rel. v. Railroad, 140 Mo. l. c. 541, supra, is sustained by the following, among other cases: Jersey City Gaslight Co. v. Gas Co., 40 N. J. Eq. 427; Railroad v. Commissioners, 39 N. J. L. 28; Railroad v. Railroad, 110 Fed. 879. The abandonment pleaded and proven in this case is but evidence of forfeiture, or at least of such non-user as would authorize a decree of forfeiture, but this decree of forfeiture must be in a direct legal action for that purpose. Courts of equity do not as a rule declare or determine forfeitures. Neither can the city by its agencies or officers declare a forfeiture. Such must be by judgment of a court. Considering all the questions raised we think this case was well decided. If there has been such acts as will justify a judgment of forfeiture, as in the case cited from the 140 Mo., let the parties bring their proper action.

The present judgment will be affirmed.

## DISSENTING OPINION IN BANC.

VALLIANT, C. J.—I concur in the propositions of law laid down in the opinion of my learned Brother GRAVES, but I draw from them a different conclusion and reach a different result from that reached by him in the application of those principles to the facts of this case.

A forfeiture results from the operation of law, it results immediately when the party whose right is forfeited has done or permitted the act by which he loses his right. It does not require a judgment of

court to create a forfeiture. A judgment declaring a forfeiture simply declares that by reason of the facts in controversy a forfeiture had already existed. A party need not wait until he can obtain a judgment of forfeiture before he acts on the assumption that a forfeiture has resulted in his favor. If he acts before obtaining a judgment in his favor he takes the risk of the correctness of his own legal conclusion, but if his conclusion is correct he is not liable in damages for acting on his own judgment.

If you enter into a contract with a man by which you grant him the right to build his fence across a portion of your land to join your fence on a condition subsequent that by a certain time he will do certain things for you and that unless he performs the condition he shall forfeit the right to maintain the fence; he builds the fence but fails to perform the condition, you would not have to go into court for a judgment of forfeiture before you could remove the fence from your land, but you could act on your own judgment, and remove the fence. If, in such case, you should be sued as for a trespass you could plead the forfeiture as a legal defense, and if the judgment of the court should be in your favor on the ground that your adversary had forfeited his right to maintain the fence, the judgment would not create the forfeiture, but would simply be declaratory of the fact that a forfeiture had resulted from the failure of the man to perform the condition. The city of St. Louis has no judicial power to declare a forfeiture, as in the opinion is well said, for the city in that respect has no more authority than an individual, but in a matter in which the city is a party in interest it may judge for itself that a forfeiture has resulted and act on its own judgment, at its own risk of course, just as the man in the case above supposed acted on his own judgment when he removed the fence. If the city grants a party the right to put an obstruction in the street, with a speci-

fied condition subsequent that the right will be forfeit-
ed if the condition is not performed, and if the city
is of the opinion that the condition has not been per-
formed and that the right has been forfeited it may
proceed, without waiting for the judgment of a court,
to remove the obstruction, holding itself liable of
course to an action at law for the consequence.

In the enforcement of forfeitures and in awarding
damages for wrongs growing out of acts based on a
mistaken assumption that a right had been forfeited,
the law courts alone have jurisdiction.   Equity has
no jurisdiction over the subject of forfeitures except
to relieve against them when it would be unconscion-
able to allow them to be enforced.   It may be stated
in strong terms that equity never interferes in a case
of forfeiture except to relieve against it, or, what is
the same thing, impose equitable conditions on its en-
forcement.   If there are no equitable circumstances
appealing to the enlightened conscience of the chan-
cellor he leaves the parties to settle their affairs in a
court of law.

There is no branch of its jurisdiction to which a
court of equity is more partial than that which en-
ables it to grant relief against a rigid application
of a legal result when there are equitable considera-
tions that call for such relief.   But in the absence or
non-appearance of such considerations a court of equity
keeps its hands off and leaves the parties to their
legal remedies; it will not aid either one side or the
other.

Now what has the equity court done in the case
at bar?   It has interfered in behalf of a party who
apparently has forfeited his right to maintain an ob-
struction in the street and who shows no equitable
considerations why the law should not be allowed to
take its course, and, by its decree, the court has tied
the hands of the opposite party and imposed on it
the burden of going to law to have the forfeiture de-

clared before taking measures in its own hands to right the wrong. There is no suggestion in the petition that the city is insolvent or in any degree unable to respond in damages for its act; there is no ground shown why the aid of a court of equity is needed to prevent an abuse of a legal right.

In my opinion when the facts of the case were developed at the trial, as they appear in the record before us, the chancellor should have dismissed the bill and have left the parties to fight it out at law.