THE STATE ex inf. SEEBERT C. JONES, Circuit Attorney, ex rel. CITY OF ST. LOUIS, v. LIGHT AND DEVELOPMENT COMPANY OF ST. LOUIS, Appellant.

**In Banc, December 21, 1912.**

1. **QUO WARRANTO: Parties: City as Relator.** In a proceeding upon the information of the circuit attorney of St. Louis to oust a corporation of a public lighting franchise, the city has a right to appear as relator.

2. ————: **Franchise: Acceptance: Implied Contract: Nonuser: Forfeiture.** The grantee of a franchise authorizing him to place wires, tubes and cables conveying electricity for the production of light or power along the streets, alleys and public places of a city, by accepting the terms of the ordinance by which it was granted, impliedly agrees to use the privilege for the public benefit, and it is only upon such implied condition that the city has the right to grant the use of its streets; and when the grantee, by continued long nonuser, fails for a long period of time to keep this implied contract, his rights to the streets are lost. Mere intention to possibly resume the use at some uncertain day cannot save the forfeiture.

3. ————: ————: **Wilful Nonuser: Forfeiture.** Wilful nonuser gives the right of forfeiture, and the nonuser may be shown to be wilful by the length of time the franchise is not used. And it may also be shown by the fact that the grantee was not financially able to exercise the privilege, and when it discontinued the use dispossessed itself of the means to further use the grant, and for more than twenty years before it attempted to sell the franchise, practically abandoned it.

4. ————: ————: **Forfeiture After Attempt to Revive.** An attempt to revive and use an abandoned and apparently forgotten franchise does not deprive the State of the right of forfeiture which was complete before the attempt was made. There is no occasion for the State to assert its right to forfeit an abandoned, unused and apparently forgotten franchise, until the attempt to revive and make use of it is made.

5. ————: ————: ————: **Assignment.** If on a certain date when the State had the right to forfeit a public lighting franchise on the ground of abandonment, the owner who had abandoned it could not as a matter of right resume the use against the will of the State, the mere sale and transfer of it by the

grantee to defendant on that date could not give such transferree any right not possessed at the time by the transferrer; and the transferree's attempt to revive the use could no more avail him than could such an attempt by the former owner.

6. ———: ———: **Right of Forfeiture: Waiver: Estoppel in Pais: Nonuser: Long Acquiescence.** Long acquiescence in existing conditions cannot be held to be a waiver of the State's right to forfeit a public lighting franchise, where the existing conditions were conditions of nonuser and practical abandonment. Had there been a long acquiescence in active misuser a different question would be presented.

7. ———: ———: ———: ———: ———: **Resumption of Use: Laches.** Where there has been no resumption of the abandoned use of the franchise, and the attempt at resumption resulted only in the institution of a suit by the State to declare a forfeiture, the suit is not barred by laches, but is timely.

8. ———: ———: ———: ———: **By Acts of City: Acceptance of Bond.** Where the franchise ordinance required the acceptor to execute a bond, to be approved by the mayor and one house of the municipal assembly, conditioned that he would comply with all the conditions of the ordinance, the approval, by the mayor and that house, long after the franchise had been abandoned by nonuser, of a new bond, was an executive, not a legislative, act, and was not a waiver by the city of the right to forfeit the franchise. Those officers had no power to create the obligation to give a bond or to waive that obligation.

9. ———: ———: ———: ———: ———: **Opinion of City Counselor.** Written opinions given by the city counselor to the mayor and board of public improvements that the ordinance franchise was still valid and binding upon the city, about which the defendant knew nothing and upon which he based no act, does not estop the city from having a forfeiture, nor constitute a waiver thereof. The city counselor has no power to bind the city in waiver or estoppel by his opinion.

10. ———: ———: ———: ———: **By Assessment of Defendant's Property.** An assessment of defendant's franchise by the city assessor, made long after the suit to declare the franchise forfeited, is no waiver of the State's right to forfeiture—especially where the assessor did not know that the right of defendant to the franchise was questioned by the city.

11. ———: ———: ———: **Waiver and Estoppel: Governmental and Proprietary Function.** So far as the city grants the mere right to use the streets, it is exercising, by delegation, a power which resides in the State, and which by its nature is governmental, and in legal effect is a grant by the State; and if grounds of forfeiture arise, the State alone can enforce it and

regain its grant, and the State alone may waive the forfeiture. In addition to the power delegated by the State to the city to exercise this governmental function, the city is also empowered to impose conditions upon the grant for its own benefit; it may determine the manner of the use, service to be rendered, compensation to be paid, etc.; as to so much of these matters as are outside of the mere right to use the streets, the city acts in its proprietary capacity, and as to them waiver and estoppel may be invoked against the city, based upon acts of the city officials' done within the scope of their official duty. But the right to forfeit the franchise (the right to use the streets) cannot be waived by such acts of the city officials as the approval of the bond of the company which assumes to exercise the franchise, or the written opinion of the city counselor (enacted upon) that the franchise is valid and subsistent, or the assessment by the city assessor of defendant's properties—and this ruling applies with peculiar force where the franchise ordinance names no grantee, by itself creates no contract, and is in form a general law.

12. ———: ———: ———: ———: ———: **Granting of Franchise.** The granting by the city of the right to string electric wires upon and along the streets is an exercise of a delegated governmental power, and such franchise is in effect a grant from the State, and it follows that the right of the State to recall the grant, upon sufficient grounds, cannot be waived by the acts of the administrative city officials.

13. ———: ———: ———: ———: **Acts Pertaining to Proprietary Function.** The proposition that a city, acting in its private or proprietary capacity, may be estopped by the conduct of its officers from suing to have the franchise forfeited; and the proposition that the State may be barred to maintain such a suit, by long acquiescence in a use or by express recognition by governmental authority, has no application where the suit is to oust defendant of a franchise granted by the State, or where there is no acquiescence in the use of the grant and no recognition by governmental authority of such use, and the grantee has not, in good faith, in reliance upon such grant, expended money in the exercise of the privilege or changed its position to its injury.

14. ———: ———: ———: **Estoppel.** Where the grantee of the franchise has not changed its position to. its detriment, or expended any money, upon the faith of any acts of the city officials, the State is not estopped to maintain a suit by *quo warranto* to have the franchise forfeited.

15. ———: ———: ———: **Recognition by Legislative Acts.** The city in 1884 enacted an ordinance which purported to extend to any one who might thereafter accept and comply with its

terms, the privilege of stringing electric wires upon and along. its streets for the purpose of supplying the inhabitants with light. In 1892 it changed its policy, and by ordinance provided that no wires conveying electricity should thereafter be placed along or across the streets unless duly authorized by the municipal assembly except persons or companies that had, previous to the passage of the ordinance, "accepted and complied" with the prior ordinance. *Held*, that the words "complied with" meant something more than the acceptance of the prior ordinance and the filing for three years of the bond required by it; they mean the performance of that duty which is the essence of the contract, namely, the service of the public; and as defendant has not complied with that implied obligation, but for more than twenty years made no further use of the grant, but in practical effect abandoned it, the suit to forfeit its franchise claimed under the original ordinance, which named no grantee, by itself created no contract, and was in form a general law, is not barred by the said ordinance passed in 1892.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*O'Neill Ryan, E. C. Slevin* and *Charles W. Bates* for appellant.

(1)  This is not a State case; the city is relator and the real party in interest.  (a)  The city cannot, as the governmental agency of the State, maintain *quo warranto* proceedings.  Kavanaugh v. St. Louis, 220 Mo. 518.  No such power or authority is granted the city by charter, statute or otherwise, expressly or impliedly.  On the contrary, those that are granted such power and invested with such functions are designated by law, namely, the Attorney-General of the State and the county prosecuting attorneys and the circuit attorney of the city of St. Louis.  R. S. 1909, Secs. 970, 975, 1007; R. S. 1899, Secs. 4943, 4950, 4959; State ex rel. v. McMillan, 108 Mo. 157; State ex rel. v. Rose, 84 Mo. 202.  The franchise sought to be forfeited was granted by the State through the medium of the city.  Kava-

naugh v. St. Louis, 220 Mo. 496; State ex rel. v. Railroad, 140 Mo. 539. And the general rule is that only the State can question the right of the grantee to exercise the franchise. Fredericktown v. Fox, 84 Mo. 65. (b) The city, as relator in its own right, and not as representative of the State, cannot maintain *quo warranto* proceedings unless it shows title to some right (other than that of the State) which is being interfered with by the acts complained of on the part of respondent, namely, the use of the franchise vested in it by its charter, granted by the State, and by the ordinances of the city respecting the use of. the streets in conducting a public lighting business. No such right in the city is suggested, and none is established by the proof in this case. No injury is shown to the city by appellant's exercise of rights claimed by it. The municipal assembly of the city, the legislative department thereof, has by its ordinances declared the acts attempted to be performed by appellant, and complained of by the city, a public benefit, and has vested those rights in appellant through those to whom it granted the franchise. R. S. 1909, Sec. 2631; State ex rel. v. Vail, 53 Mo. 109; State ex rel. v. Boal, 46 Mo. 531. (c) If the city, on the record before this court, can maintain this action, it can do so only to the same extent and on the same terms and subject to the same rules of law and principles of right as can any other private relator, and its measure of relief, if entitled to any, which we deny, must be no other than a private relator would be entitled to on the same record. State ex rel. v. Lawrence, 38 Mo. 538; State ex rel. v. Boal, 46 Mo. 531. (2) The State law, statutory and common, and not the city ordinances, determines what are lawful uses of a public street. Glaessner v. Brewing Assn., 100 Mo. 508; State ex rel. v. St. Louis, 161 Mo. 371; Schopp v. St. Louis, 117 Mo. 131; Lackland v. Railroad, 31 Mo. 186; Lockwood v. Railroad, 122 Mo. 86; Knapp Stout & Co. v. Transfer Co., 126 Mo. 36; State ex rel. v.

Murphy, 134 Mo. 548; Sherlock v. Railroad, 142 Mo. 185; St. Louis v. Gloner, 216 Mo. 502; Peters v. St. Louis, 226 Mo. 62; Coal Co. v. Scruggs Co., 62 Mo. App. 93; Realty Co. v. Crockett, 158 Mo. App. 573; Morie v. Transit Co., 116 Mo. App. 23.   The use of the public streets for distribution of electricity for public use, such as is claimed by appellant, is a lawful use of the streets.   This is admitted by relator's amended petition.   State ex rel. v. St. Louis, 145 Mo. 551; Ferrenbach v. Turner, 86 Mo. 416; Bldg. Assn. v. Tel. Co., 88 Mo. 258; Schopp v. City, 117 Mo. 131; State ex rel. v. Murphy, 134 Mo. 548; Subway Co. v. City, 169 Mo. 331; St. Louis v. Tel. Co., 149 U. S. 465.   (3)   While the Legislature has paramount authority over all the highways of the State, including the streets of St. Louis, the authority to regulate the lawful uses thereof is to a large extent delegated to the city. Ferrenbach v. Turner, 86 Mo. 416, 419; Subway Co. v. St. Louis, 169 Mo. 331.   (b)   The city had the lawful power to enact ordinance 12723 and grant the rights therein conferred.   This is admitted by relator's amended petition.   Constitution 1875, Art. 9, Secs. 20, *et seq.;* Charter, Art. 3, Sec. 26, pars. 2, 3 and 14; Subway Co. v. St. Louis, 169 Mo. 319; State ex rel. v. St. Louis, 145 Mo. 574. (4) Ordinance 12723, its acceptance and filing of the bond required and operation thereunder by appellant's assignors, constituted a contract between them and the city, called the grant "franchise," "consent," or what you may.   Subway Co. v. St. Louis, 169 Mo. 330; State ex rel. v. Miller, 66 Mo. 328; State ex rel. v. St. Louis, 145 Mo. 551, 568; State ex rel. v. Railroad, 140 Mo. 539; Detroit v. Railroad, 184 U. S. 368; St. Louis v. Tel. Co., 148 U. S. 92; Minneapolis v. Railroad, 215 U. S. 417; Louisville v. Tel. Co., 224 U. S. 649.   In making this grant the city was acting in its proprietary, and not its governmental, capacity.   State ex rel. v. St. Louis, 145 Mo. 551; State ex rel. v. Gates, 190 Mo. 555; Louisville v. Tel. Co., 224 U. S. 661.   (5)

The two ordinances, 11976 and 12723, are not in conflict or inconsistent. The latter is merely an amplification of the former. St. Louis v. Weitzel, 130 Mo. 617; Asphalt Co. v. Kuhlman, 137 Mo. 543. But in fact, ordinance 12723 expressly repeals all existing inconsistent ordinances. This is an express repeal within the meaning of the charter provision, Sec. 28, Art. 3. Delaney v. Court, 167 Mo. 675. Repeal and reinactment of ordinance 12723 is a continuation of the old ordinance, and the rights of appellant's assignors remained as before. State ex rel. v. Mason, 153 Mo. 58; State ex rel. v. Court, 53 Mo. 130; Smith v. People, 47 N. Y. 330; Ordinance 14000, secs. 581-592, 1122 and 1131. (6) The acceptance as filed of ordinance 12723 was sufficient. In express terms it states that the acceptors "hereby accept all the terms of ordinance 12723." Furthermore, the bond subsequently filed supplies the omission of which relator complains. The acceptance was complete when the bond was filed, if not before. Operation under the contract and acceptance of payments thereunder estops relator from denying its validity. (7) This franchise contract was property which could be assigned and transferred. Kavanaugh v. St. Louis, 220 Mo. 496; State ex rel. v. Railroad, 140 Mo. 539; Railroad v. Delamore, 114 U. S. 501; Louisville v. Tel. Co., 224 U. S. 449. (8) Mere nonuser does not constitute an abandonment. Inv. Co. v. Railroad, 108 Mo. 50; State ex rel. v. Railroad, 140 Mo. 552. Intention to abandon is the essence of abandonment. State ex rel. v. Railroad, 140 Mo. 539; 1 Cyc. 4, 5, 7; Hummel v. Railroad, 175 Pa. St. 537; Curran v. Louisville, 83 Ky. 628; Dyer v. Sanford, 9 Metcalf, 395; Hayford v. Spokefield, 100 Mass. 491. The nonuser must furthermore be without lawful use or explanation. State ex inf. v. Club, 200 Mo. 34. (9) (a) Courts abhor forfeitures and they will not be declared when the only effect would be damage to the grantee and injury to the public. State v. Morris, 73

Tex. 435. (b) Courts will exercise a sound, judicial discretion as to whether they will forfeit a franchise of a corporation, even though grounds for forfeiture may exist. The public good is the paramount consideration. The public good is not served by the forfeiture in the case at bar. State ex inf. v. Oil Co., 218 Mo. 464-499; State ex inf. v. Club, 200 Mo. 67; State ex inf. v. Packing Co., 173 Mo. 392; State ex rel. v. Mansfield, 99 Mo. App. 146. (c) Acquiescence by the city should be taken into consideration by the court in the exercise of sound, legal discretion in declaring or refusing to declare a forfeiture for mere nonuser of the franchise. State ex rel. v. Bridge Co., 206 Mo. 145. (10) Proceedings to forfeit franchises come too late if not brought until after the cause for forfeiture has ceased. High on Extra. Legal Remedies, Sec. 667; People v. Bank, 6 Cow. 196; People v. Bank, 6 Cow. 217. Where the fault has been abandoned (the wrong for which the law authorizes a forfeiture or a fine), a forfeiture should not be declared. State ex inf. v. Packing Co., 173 Mo. 393; Standard Oil Case, 218 Mo. 467. (11) The municipal assembly of the city so far as St. Louis is concerned may release from the effects of acts which are sufficient grounds for forfeiture of the franchise. That the municipal assembly of St. Louis, by its repeated enactments—the last being in 1907—did release from the effects of nonuser, the owner of the Aloe-Hernstein franchise, appellant herein, under ordinance 12723, is clear. (12) Franchises cannot be forfeited for abandonment or nonuser by administrative officers, and until they are forfeited by judgment of court, administrative officers cannot take upon themselves the power to determine this question. Until the court declares a forfeiture, such officers are bound to recognize the franchise. Kavanaugh v. St. Louis, 220 Mo. 496. The board of public improvements is, under the charter, an administrative body, and Aloe, Hernstein &

246 Mo.—40

Co. had a valid franchise which was by mesne conveyances duly assigned to appellant, and it was the plain duty of the board, under the facts in this case, to have issued permits to appellant. State ex rel. v. Flad, 23 Mo. App. 185; State ex rel. v. St. Louis, 145 Mo. 568; St. Louis v. Weitzel, 130 Mo. 620. (13) Municipal corporations, when acting in their proprietary, as contradistinguished from their governmental, capacity, are subject to estoppel *in pais* to the same extent as private corporations. Herman on Estoppel, Sec. 1222, p. 1363; 1 Dillon, Mun. Corp., Sec. 237; High Extra. Rem., Sec. 621; Chicago, etc., Co. v. Joliet, 79 Ill. 39; Martel v. E. St. Louis, 94 Ill. 69; Gregston v. Chicago, 145 Ill. 464; State ex rel. v. Water Co., 32 L. R. A. 391; Cronen v. New York, 79 N. Y. 511; Knight v. Railroad, 70 Mo. 237; Railroad v. Tridelphia, 4 L. R. A. (N. S.) 321; Railroad v. County, 36 Mo. 294; Union Depot Co. v. St. Louis, 76 Mo. 393; Louisville v. Tel. Co., 224 U. S. 649. The particular construction placed on a statute by officials who act under it, is entitled to much weight, though, of course, not conclusive upon the courts. State ex rel. v. Railroad, 135 Mo. 648. And so are the acts of the legislative department. (14) The city having prevented appellant from operating under its franchise cannot insist that user of the franchise had not been resumed. It cannot exact performance when it prevents it. Subway Co. v. St. Louis, 169 Mo. 331. (15) Municipal corporations are as much bound by laches and acquiescence as are private persons and corporations. Boone Co. v. Railroad, 139 U. S. 693. (16) The obligation to do justice rests on all persons, including cities. Wood v. Kansas City, 162 Mo. 312. (17) The arbitrary and unlawful action of the board of public improvements in refusing permits to the appellant while granting them to others similarly situated was depriving appellant of its property without due process of law and was denying to it the equal protection of the laws, in violation of the Con-

stitutions both of Missouri and the United States. Railroad v. Chicago, 166 U. S. 233.

*Lambert E. Walther* and *William E. Baird* for respondent.

(1) The city is invested with the power, and charged w:ith the duty, of preserving the highways within its confines for the benefit of the people of the State. As such trustee it may properly move in the institution of a *quo warranto* proceeding of this character. Charter, Art. 3, Sec. 26; Sluder v. Transit Co., 189 Mo. 129; St. Louis v. Tel. Co., 149 U. S. 469; State ex rel. v. Railroad, 140 Mo. 539; Corley v. Railroad, 150 Mo. 468. (2) Ordinance 12723 was not in effect at the time of the alleged acceptance by the appellant's predecessors, because at the time of the passage of the pretended ordinance 12723 there was in full force and effect another general ordinance of the city of St. Louis dealing with the same subject-matter, with the essential and vital parts of which ordinance 12723 was in conflict, and ordinance 12723 did not in express terms repeal said ordinance 11976 as required by the charter. Charter, Art. 3, Sec. 28; Lemoine v. St. Louis, 72 Mo. 404; St. Louis v. Sanguinet, 49 Mo. 581; Quinnette v. St. Louis, 76 Mo. 402; Construction Co. v. Hauessler, 201 Mo. 409. (3) Ordinance 12723, insofar as it attempted to grant a franchise to individuals, was void, for the reason that at the time of the passage of said ordinance an individual was incapable of receiving such a grant from the city. Beekman v. Railroad, 153 N. Y. 152; State ex rel. v. Murphy, 134 Mo. 573; Phoenix v. Gannon, 108 N. Y. 255; Railroad v. Railroad, 166 Pa. St. 162; 3 Thompson on Corporations, Sec. 2874; R. S. 1879, Sec. 951. (4) Ordinance 12723 purported to give to those accepting the ordinance, according to its terms, the right to select any and every street in the city as an avenue for placing wires, tubes

and cables for the purpose of conducting electricity, subject only to the mere ministerial power of the board of public improvements to determine whether or not the manner in which the work was to be done conformed to the ordinance. The ordinance, therefore, was void, at it was an attempt to farm out every street in the city to every person who might make a formal acceptance of the ordinance. Booth on Street Railways, Sec. 55; Railroad v. Jones, 34 Fed. 577; Mayor v. Africa, 77 Fed. 501; Railroad v. Logansport, 114 Fed. 695.; Railroad v. Railroad, 64 Fed. 647; City v. Eddy, 123 Mo. 558. (5) Assuming that ordinance 12723 was a valid ordinance, nevertheless, Aloe, Hernstein & Co. acquired no rights thereunder, because there was no valid acceptance of the ordinance in accordance with its terms. Ordinances purporting to grant rights to private parties in public highways are strictly construed, and all of the preliminaries necessary to the acquisition of such rights must be strictly complied with. Lyons v. Railroad, 32 Md. 18. (6) Assuming that Aloe, Hernstein & Co. acquired a vested right in the streets of the city for the purpose of laying wires, tubes and cables for conveying electricity, nevertheless the right was lost by nonuser, and *quo warranto* is the proper method to test this question. State ex rel. v. Railroad, 140 Mo. 539; Spelling, Ex. Remedies, Sec. 1813; State ex inf. v. Club, 200 Mo. 34; Kavanaugh v. St. Louis, 220 Mo. 496; State ex rel. v. Railroad, 72 Wis. 612; People v. Railroad, 126 N. Y. 29; People v. Railroad, 117 Cal. 604. (7) The city in making such a grant acts as an agent of the State, and as such is powerless to preclude the State, to which all the high-ways of the State belong, from recalling the grant for nonuser. It was not possible, therefore, for any of the ministerial officers of the city to estop the State from bringing this proceeding, or by inaction to waive this right of the State. State ex rel. v. Railroad, 140 Mo. 539; State ex rel. v. Flad, 23 Mo. App. 185; Wright v.

Doniphan, 169 Mo. 601; City v. Gorman, 23 Mo. 593; People v. Pullman Co., 175 Ill. 125; People v. Railroad, 117 Cal. 604; Railroad v. Belleville, 122 Ill. 376; State ex rel. v. Sharp, 27 Minn. 38; Abbott on Mun. Corp., Sec. 666; People v. Turnpike Co., 23 Wendell, 254; People v. Bank, 12 Mich. 527; People v. McClellan, 130 N. Y. Supp. 146; People v. Comrs., 123 Ill. App. 604. (8) Assuming that it was possible for the administrative officers of the city to estop the State and to bar the proper officers from bringing this suit, nevertheless, there was nothing done in this case by any of the city or State officials in their official capacity upon which this appellant relied and changed its position to its detriment, nor was there any ''legislative release'' of forfeiture. City v. Foster, 52 Mo. 513; City v. Alexander, 23 Mo. 509; Cape Girardeau v. Riley, 52 Mo. 429.

FERRISS, J.—In March, 1884, the municipal assembly of the city of St. Louis enacted an ordinance, No. 12723, with the following title: ''An ordinance regulating the placing of wires, tubes or cables conveying electricity for the production of light or power along the streets, alleys and public places of the city of St. Louis.'' The ordinance provides that all wires and poles be installed in such manner as may be approved by the board of public improvements, which body is authorized to grant permits for such installation. It contains some general provisions as to character and placing of poles, also as to excavations and restoration of streets. Section 10, under which appellant claims the franchise in controversy, reads as follows:

''No person or persons, corporation or association, shall be entitled to any of the privileges conferred by this ordinance, except upon the following conditions: That said person or persons, corporation or association, before availing himself or itself of any of the rights or privileges granted by this ordinance, shall file

with the city register his or its acceptance of all the terms of this ordinance, and agree therein that he or it will file with the comptroller of the city, on the first days of January and July of each year, a statement of his or its gross receipts from his or its business arising from supplying electricity for light or power for the six months next preceding such statement, which shall be sworn to by such person or persons, or the president or secretary of such corporation or association; and further agree that he or it will, at the time of filing said statement with the comptroller, pay into the city treasury two and one-half per cent on the amount of such gross receipts up to the year 1890, and five per cent on the amount of such gross receipts thereafter. And said person or persons, corporation or association shall, at the time of filing said acceptance, also file with the city register his or its penal bond in the sum of $20,000, with two or more good and sufficient securities, to be approved by the mayor and council, conditioned that he or it will comply with all the conditions of this ordinance, or any ordinance which may be hereafter passed regulating the placing of wires, tubes or cables in the streets and alleys for the purposes named therein; that he or it will comply with all the regulations made by the board of public improvements having reference to the subject embraced in this or any other ordinance for the purposes herein named; that he or it will make the statements and payments required by the provisions of this section, and will save the city of St. Louis harmless and indemnified from all loss, cost or damages by reason of the exercise of any of the privileges granted by this ordinance or any other ordinance which may be hereafter passed relating to the subject matter of this ordinance.''

Section 11 provides a penalty for violation of the provisions of the ordinance. In 1892 the following amendment was adopted:

"That no wires, tubes or cables conveying electricity for the production of light, heat or power, shall hereafter be placed along or across any of the streets, alleys or public places in the city of St. Louis, by any person, corporation or association not having, previous to the passage of this ordinance, accepted and complied with ordinance number twelve thousand seven hundred and twenty-three, now amended, or shall be duly authorized by the municipal assembly, and then only as hereinafter provided."

In July, 1884, Aloe, Hernstein & Co., a commercial firm dealing in optical instruments and appliances at the corner of Fourth and Olive streets, in St. Louis, filed its acceptance of ordinance No. 12723 as follows:

"St. Louis, July ――, 1884.

"Mr. Nicholas Berg, Register, City of St. Louis.

"Dear Sir: We, Aloe, Hernstein & Co., hereby accept all the terms of ordinance No. 12723 of the city of St. Louis, entitled, 'An ordinance regulating the placing of wires, tubes or cables conveying electricity for the production of light or power along the streets, alleys or public places of the city of St. Louis,' Approved March 15, 1884.

"And hereby agree that we will file with the comptroller of the city of St. Louis, on the first day of January and July of each year a statement of gross receipts from the business arising from supplying electricity for light or power, for the six months next preceding such statement of its gross receipts, which shall be sworn to by Aloe, Hernstein & Co. And we further agree that we will at the time of filing said statement with the comptroller pay into the city treasury two and one-half per cent on the amount of such gross receipts thereafter.

"Respectfully,

"ALOE, HERNSTEIN & Co."

Bond was also given as required by the ordinance. This firm had in the basement of its store an electrical generating plant. Since 1881 the firm had been lighting its own premises and also furnishing light to a few of its neighbors. It continued to do so until 1887, mainly by wires strung over house tops. Some wires were strung on poles, but whether the poles were owned by the firm does not clearly appear. The record shows three semi-annual returns and payments to the city, as required by the ordinance, the last one being in 1885. In January, 1887, the firm sold its lighting contracts to a lighting company and also sold a part of its equipment, discontinuing its plant at Fourth and Olive streets. For about six months thereafter it continued to supply two customers with light from another point to which it had removed its remaining plant, and then abandoned the lighting business altogether and sold its remaining equipment. It was found that the firm, for want of capital, room and equipment, could not compete for the lighting business.

In 1884 electric lighting was comparatively in its infancy. The demand was limited. There were several small companies in the field, two of them only owning poles. Evidently the business of selling electric light extended rapidly, and became so changed in character that Aloe, Hernstein & Co., with whom it was but an incident to their mercantile business, concluded that its continuation by them was inexpedient. The lighting business was in fact discontinued by them after the middle of the year 1887. Neither this firm nor its successors exercised thereafter the rights and privileges granted by ordinance No. 12723. There was complete nonuser as to actual service up to the time of the institution of this suit in *quo warranto*—a period of more than twenty years.

The firm of Aloe, Hernstein & Co. was succeeded in 1885 by the firm of A. S. Aloe & Co., and this latter firm, in 1890, was succeeded by the corporation A. S.

Aloe Instrument Co., the immediate grantor of appellant. Neither of these several concerns, by any specific entry on its books, carried this grant from the city as an asset. If it was salable, it passed from Aloe, Hernstein & Co. to the successors of that firm as part of the general assets which were transferred in gross until they reached the Aloe Instrument Co. So matters stood until 1908. In February of that year the appellant corporation was organized with a capital of $5000, and chartered by the State to do a general electric service business, as well as supply ''steam, gas or other mechanical or hydraulic power for light, heat, power, refrigeration, traction or other purposes.'' On August 10, 1908, the Aloe Instrument Co., by written agreement of that date, conveyed to appellant ''the license and franchise'' and all rights appertaining thereto, in consideration of the following payments, to-wit: ''The delivery by the light company to the Aloe company, this day made, of two notes for one thousand dollars each, executed by the light company to the order of the Aloe company, one payable sixty days from date, one payable one year from date, each for the sum of one thousand dollars without interest, and indorsed by H. Wurdack and E. M. Kurtz of the city of St. Louis; and the light company further agrees to pay the Aloe company the sum of ten thousand dollars, to be paid at the expiration of two years from this date, to-wit, August 10, 1910, provided the city of St. Louis has acknowledged, recognized and acquiesced in the existence and validity of the license and franchise above mentioned, and of the ownership of the light company and its right to operate thereunder and to have all the privileges, powers and rights that may be exercised thereunder or in virtue thereof, or that may in any manner arise out of same; and provided, further, that if there be litigation, whether instituted by the city or by others, involving the ownership, rights or powers of the light company under or in virtue of

or arising out of said license and franchise, it shall have been ended finally and favorably to the ownership, rights and powers of the light company, and unless said conditions exist, the light company shall not be then liable to pay said ten thousand dollars, nor at all, except as hereinafter mentioned. If the said conditions do not exist in two years from this date, then every additional year (or more than half thereof) beyond two years from date, up to and inclusive of the year commencing August 10, 1912, until such conditions are established, to-wit, that the light company shall have the full and uncontested right as owner hereunder to exercise all rights, privileges and powers under or arising from or in virtue of said license and franchise, the said light company shall pay to the said Aloe company the additional sum of one thousand dollars, making the maximum of liability (exclusive of the notes) hereunder thirteen thousand dollars, and in the event that the city fails to recognize, accept and acquiesce in the existence and validity of the said license and franchise, and the ownership of the light company of, and right to exercise all the rights, privileges and powers under or arising from or in virtue of said license and franchise, and operate thereunder, or in the event that the ownership and right of the light company as last aforesaid under said license and franchise is successfully contested by other parties, then any and all obligation to pay the said ten thousand dollars and other sums hereinbefore provided for (except as to said two notes) shall cease; it being the understanding of the parties hereto that the said ten thousand dollars, or the additional sums of one thousand dollars each, provided for herein, shall not, nor shall any of them be paid, nor shall the light company be in any respect liable therefor, unless and until its right to own and operate and exercise all the rights, privileges and powers provided for in and under said license and franchise, or in any manner arising from or in virtue of

same, shall be fully and completely established and no longer in controversy.''

And so matters stood until February 8, 1909, on which date appellant filed with the board of public improvements an application for a permit to install wires in a street therein specified. With this application was filed a letter from the Aloe Instrument Co., addressed to the board, advising it of the sale to appellant. No action was taken by the board at the time upon the application. Same was indorsed "file." Mr. O'Reilly, president of said board, told the president of appellant company that the company would have to file a new bond. Whether this statement by O'Reilly was made at a board meeting does not appear. On March 15 following, appellant filed a bond for $20,000 with the city register, on which bond was indorsed the approval of the mayor and city council, and also the approval of the city counselor as to its form. Appellant made the following offer of proof:

"By Judge Ryan: I offer to prove this, that after these applications were filed, back in the early part of 1909, the president of the board told Mr. Wurdack, this witness, who inquired of Mr. O'Reilly, as such president, what the delay was in acting upon these applications, that they did not care to make—to take any action on the application until after the disposition by the circuit court of this city of the case of Trigg against the board, which was then pending, and which involved the franchise of the West End Light and Power Company under ordinance 12723, and for that reason he said those applications would be delayed—action on them would be delayed."

Objection to this was sustained. On June 20, 1909, appellant filed two additional applications for permits to wire specified streets. On June 22, 1909, adverse action was had on all three applications. This suit was instituted on the same day. The record shows, although the evidence was held incompetent, and was in

the decree stricken out by the court, that in 1910, and subsequent to the filing of this suit, the assessor of the city, being ignorant of the suit to forfeit the franchise, assessed it against appellant at $500,000. This assessment was appealed to the board of equalization and was pending there at the time of the trial; that in December, 1909, appellant, in its sworn return for taxation, valued all its personal property, consisting of office furniture only, at $200. In its affidavit for appeal from the assessment, appellant stated that this franchise, pending this suit, was worthless. The record also shows—with similar ruling by the circuit court—official opinions from the city counselor to the mayor favorable to the claims of appellant under this franchise. Appellant also put in evidence, subject to objection, the pleadings and the decision of the circuit court in the case of one Trigg against the West End Power and Light Co. and the board of public improvements. This was a suit by a property owner to enjoin the board from issuing a permit to string wires under a franchise claimed to be similar to the one in controversy. The Trigg suit was filed in December, 1909, and was pending in March, 1909. The injunction was denied by the circuit court.

The pleadings in this proceeding in *quo warranto* are extremely lengthy, and need not be set out. The petition of the State charges the invalidity of ordinance 12723, and that the acceptance of Aloe, Hernstein & Co. was insufficient; also charges failure to file returns, and nonuser, abandonment and usurpation of the franchise by appellant. The return denies the allegations of the petition regarding these matters, affirms the validity of the franchise, charges the city with laches, and pleads waiver and estoppel, based on the aforesaid acts of the city officials. The circuit court, after hearing the evidence, entered a decree ousting appellant from the franchise. The court also struck out of the return the allegations relating to the action

of the president of the board of public improvements, and of the mayor and council in approving the bond of appellant, the opinions of the city counselor, and the action of the assessor.   The decree further ordered that as to all the evidence taken subject to objection concerning these matters the objections be sustained. The written opinion of the learned circuit judge preserved in the record puts the ruling on the ground of nonuser. . Further facts will be stated in the course of this opinion.

Both parties to this controversy state in their briefs that the question of abandonment is paramount. We take up this question first.   If it shall be ruled against appellant, it will be unnecessary to consider other questions discussed, i. e., the validity of certain ordinances, the sufficiency of the acceptance by Aloe, Hernstein & Co., and their capacity to hold the franchise.   Respondent does not challenge the title of appellant.   It is conceded the same rights in the franchise that Aloe, Hernstein & Co., or the successors of that firm, would have were they attempting to exercise it at the time of the transfer from the Aloe corporation to appellant.

I.   The right of the city to appear as relator is challenged.   We think that the case of State ex rel. Kansas City v. Fifth Street Ry. Co., 140 Mo. 539, is conclusive of that question in favor of the right.

II.   It is conceded fact that there was complete nonuser from 1887, when the Aloe Company discontinued its lighting service, to August, 1908, the date of the transfer to respondent, a period of twenty-one years.   It appears as a further fact from the record that the nonuser continued in fact subsequent to August, 1908.   Therefore, when this suit was instituted there had been a complete nonuser since 1887, a period of twenty-two years.   An attempt to resume the use

was made by appellant in February, 1909, by filing an application with the board of public improvements for a permit to use certain specified streets, and also by filing a bond on March 15, 1909. The permit was refused by the board. On this point the learned circuit judge, in summing up the facts in his written opinion, says:

"As a matter of fact, the nonuser has never ceased. It is true that the respondent became the assignee of whatever rights Aloe, Hernstein & Co. or A. S. Aloe & Co. had in the streets of the city of St. Louis by virtue of the permit to them issued by the board of public improvements, but neither Aloe, Hernstein & Co., A. S. Aloe & Co., nor anyone working under them, nor the respondent in this case, has ever used a foot of the streets or alleys or public places of the city of St. Louis for the purpose of furnishing light and power by electricity since 1888. It is true that respondent filed a bond which was approved by the mayor and city council in accordance with the suggestion of the president of the board of public improvements. It is true they made application for the permit to use certain streets of the city of St. Louis, as assignee of Aloe, Hernstein & Co., but the permit was refused. They have never, so far as this record is concerned, set a pole, strung a wire or furnished a volt of electricity under this privilege. It does not appear in this record that the streets which Aloe, Hernstein & Co. were permitted to use in 1884 were the same streets that the respondent asked the board of public improvements to issue a permit to them to use. It does not appear by anything in this record that they wanted to use the same streets that were used by Aloe, Hernstein & Co., and it is an error of fact to claim that there was any exercise of any kind of the franchise granted to Aloe, Hernstein & Co. by the respondent."

To meet this situation of fact, the appellant contends that mere nonuser will not justify a forfeiture

of the rights claimed, that nonuser is subject to explanation, and that the question of abandonment by nonuser "is essentially dependent upon the intention of the owners of the franchise." Appellant attempted to introduce proof of the intention of the owners of the grant at the time the use was discontinued. The record shows the following in connection with the testimony of Mr. Louis P. Aloe, a surviving member of the old firm:

"Q. What was the attitude of the old firm, that is, of your father and you two sons, Sidney and yourself, with respect to that franchise up to about the time of Mr. Aloe's death—your father's death? A. You mean by that how we regarded it? Q. Yes, sir. A. Well, felt possibly some day we might exercise it and go into the business ourselves."

On objection, the court struck out this answer as immaterial. Again in the deposition of another member of the old firm, this question and answer appear without objection:

"Q. When you ceased furnishing current, what were your plans, if any, as to the future conduct and operation of the business? A. Our idea was to use a larger size plant where we could take care of all the business obtainable. The business of furnishing electric light and power was then in its infancy. The public had just commenced to realize its possibilities and benefits. We knew how great they were, but we also knew that electricity was then making very rapid strides and new machinery was coming in. It would require an outlay of a very much larger sum of money than we had to put in the other. We thought we could form a company; in fact, we talked about forming a separate electric light company, and then the matter dragged on. My father went to Europe, and it was put off from time to time, and I don't remember how far the plans had matured, but I know we spoke about it a very short time before his death. Of course his

death, coming at a very unexpected time, without any warning, without any previous sickness, it naturally upset everything, and the matter dragged on again until the fire, and that upset things again. Q. I suppose you boys had all you could do in keeping the optical and surgical business? A. We had all we could do, and didn't push it. In the meantime I left the city, and that is the last I know of it.''

The foregoing testimony shows no more than that the parties contemplated a possible resumption, if conditions of capital and combination should become favorable. It does show a complete present abandonment on account of inability to continue the use. It will hardly be claimed that mere financial inability to carry out the terms of a contract is a legal justification of its breach. The evidence shows that it was determined by the owners that it was impracticable to continue the business. They abandoned the enterprise in fact, sold their lighting contracts and equipment, and thus disabled themselves to further exercise the franchise. Furthermore, we do not think that the rights of the State, in case of nonuser, to resume the privileges granted, can be defeated by an intention which has remained hidden in the minds of the owners, and first brought to light after twenty years. By accepting the terms of the ordinance, the grantee of the privilege impliedly agreed to use it for the public benefit. And it is only upon such implied condition that the city has the right to grant the use of the streets. [The Julia Bldg. Assn. v. Bell Tel. Co., 88 Mo. 258; Glaessner v. Brewing Assn., 100 Mo. 508.] When the grantee, by continued nonuser, fails for a long period of time to keep this implied contract, his rights in the street are forfeit. In such case, mere intention to possibly resume the use at some uncertain future day cannot save the forfeiture. Service to the public is of the essence of the contract which arose upon the acceptance of the terms of ordinance No.

12723, and wilful nonuser in this regard gives the right of forfeiture. [State ex rel. v. Railroad, 140 Mo. l. c. 553; State ex rel. v. Delmar Jockey Club, 200 Mo. l. c. 69.] This doctrine applies either to forfeit the existence of a corporation, or to forfeit the particular franchises owned by it. [Spelling, Extraord. Remedies (2 Ed.), Sec. 1813.] Hence, the doctrine clearly enunciated by Graves, J., in State ex inf. v. Jockey Club, supra, applies here. On page 68 he says: "When a corporation receives from the State a charter granting certain franchises or rights, there is at least an implied or tacit agreement that it will use the franchises thus granted; that it will use no others, and that it will not misuse those granted. A failure in any substantial particular entitles the State to come in and claim her own, the rights theretofore granted, and this through a judgment of forfeiture in a proceeding like the one at bar." He further says that a failure may be shown to be wilful by the length of time of the nonuser. (In the case at bar there is not only the length of time, but the further fact that the appellant, when it discontinued the use, dispossessed itself of the means to further use the grant. Its acts indicated deliberate abandonment.) The same doctrine is enunciated in Kavanaugh v. St. Louis, 220 Mo. 496, with regard to a franchise granted by the city to use the streets for a street railway.

The Supreme Court of Wisconsin has ruled that when a corporation has assumed the performance of a public duty, namely, to operate a street railroad, it cannot neglect this duty without forfeiting its franchises. [State ex rel. v. Street Ry. Co., 72 Wis. 612.]

In People v. Broadway R. R. Co., 126 N. Y. 29, the court says: "The power of the court to declare the franchises of defendant forfeited for nonuser is undoubted. This defendant should not stand in the streets of Brooklyn claiming franchises which for

246 Mo.—41

many years it has refused to use, and thus bar out other railroads which might be constructed for public convenience and accommodation. If these franchises are of no value it is not harmed by the judgment of the special term. If they are valuable and of growing worth it should have discharged its duty to the public by using them.''

It must be held both on authority and reason that where the grant of a franchise is upon the implied condition that it shall be used for the public benefit, and there is a continued breach of the condition, whether because of misuser or nonuser, a cause for forfeiture exists.

But, contends the appellant, even if all this be true, still the information in *quo warranto* comes too late, and the right to forfeiture ceased when the appellant was able and willing to resume the use, and in fact attempted to do so. As supporting this proposition appellant relies upon a statement in section 667, High on Extraordinary Remedies, to the effect that the right to prosecute for a forfeiture ceases with the cause upon which the information is based. The cases cited to support the text depend upon a peculiar statute which deprives them of any force as precedents here. [People v. Turnpike Co., 23 Wend. 254; People ex rel. v. Bank, 12 Mich. 527.] Here the cause for forfeiture has not ceased; the nonuser has continued. This franchise was and is in complete disuse. It had been, to all intents and purposes, abandoned. The fair inference was that all claims thereunder had been surrendered to the State. There was, therefore, no occasion for the State to assert its right to forfeit this dead and apparently forgotten franchise until some attempt should be made to galvanize it into life. It cannot be that such attempt in itself deprives the State of a right of forfeiture which was complete before the attempt was made. If, on the first day of August, 1908, when the State had a right to forfeit this franchise on the ground of aban-

donment, the owner who had abandoned it could not as a matter of right resume the use against the will of the State, surely the transfer of August 8 to the appellant could not give to appellant any right not possessed at the time by the transferrer; and its attempt to revive the use could no more avail than could an attempt by the former owner.

The language used by the Supreme Court of Michigan in People v. Bank, supra, although used with reference to the dissolution of a corporation, is pertinent here. The court said "We think, therefore, that after this corporation, in the face of this statute, had allowed itself to remain insolvent and its corporate powers to lie dormant without an attempt to fulfill the purposes of its creation for a whole year, the State shows sufficient diligence (if any be required) if it proceed to institute proceedings, and to claim a forfeiture, within a reasonable time after it is informed of the first visible manifestations of returning life, or of the first public indication of an intent to assert its legal existence by the exercise of its original franchises. The resumption of business, therefore, or the attempt to resume after having remained insolvent, and to all outward appearance inanimate for nearly a quarter of a century, is rather a justification for, than a bar to, this proceeding by *quo warranto.*"

The appellant further asserts that the right of forfeiture has been lost by waiver, estoppel and laches. Its position is thus stated in its brief:

"Assuming a valid contract to have been made between the city and Aloe, Hernstein & Company, which might possibly have been annulled at any time from the year 1888 to August 10, 1908, when the assignment was made to this defendant, such right of forfeiture, if it ever existed, has been lost to the city by waiver by way of estoppel *in pais,* and by laches and by legislative ratification.

"1st. By long acquiescence in existing conditions.

"2d. By laches in that the forfeiture was not declared until long after resumption of the use.

"3d. By acts of the officers of the city, acting within the scope of their powers.

"4th. By legislative acts."

We will discuss these points in the above order.

First, as to "long acquiescence in existing conditions." It is unnecessary to repeat what has been said above on this point. The "existing conditions" were conditions of nonuser and practical abandonment, and which, as we have shown, imposed no duty upon the State to act. Had there been long acquiescence in active *misuser,* a different question would be presented.

Second, "By laches in that the forfeiture was not declared until long after resumption of the use." This claim is not supported by the facts. There has been no resumption of the use. An attempt was made to resume, which attempt was unavailing. It resulted only in this proceeding to forfeit the franchise. We have above ruled that the proceeding was timely.

Third, "By acts of the officers of the city, acting within the scope of their powers." The record shows acts by city officers as follows: In February, 1909, appellant filed with the board of public improvements an application for a permit to install wires in certain streets, accompanying this application with a letter addressed to the board by the A. S. Aloe Instrument Co. advising it of the sale of the franchise to appellant. This was the first notification to any city official of the claims of appellant. No action was taken at the time on this application. Mr. Wurdack, president of appellant company, testified:

"Q. What was the next step taken—what, if anything, was required of you by the board? A. The president of the board, then Mr. O'Reilly, informed

us that we would have to file a new bond, as the old bond was not available.''

When or where this statement was made by Mr. O'Reilly does not appear.  The records of the board show nothing of this, and we cannot know whether Mr. O'Reilly purported to act officially, or whether it was merely a friendly suggestion.  The board had nothing to do with the giving of bonds.  Its province under the ordinance was to determine the manner and place of installation.  On March 15, 1909, appellant filed with the city register a bond in form required by ordinance 12723.  On this bond was indorsed the approval of the mayor, city council, and, as to its form, by the city counselor.    Section 10 of ordinance 12723, among other things, provides:

''And said person or persons, corporation or association shall, at the time of filing said acceptance, also file with the city register his or its penal bond in the sum of $20,000, with two or more good and sufficient securities to be approved by the mayor and council, conditioned that he or it will comply with all the conditions of this ordinance.''

The approval by the mayor and council is solely with regard to the sufficiency of the sureties.  The approval by the city counselor is restricted, as his indorsement indicates, to the form of the bond.  The city register is a mere custodian.  The act of the city council in approving the bond is executive, not legislative.  A legislative act requires the concurrence of both council and house of delegates.  The obligation to give the bond provided for in the ordinance arises from a legislative act of the municipal assembly.  It does not emanate from any city officer.  The approval and filing of bonds is a matter of daily routine with the officials referred to, whose duties are limited to passing on the sufficiency of the bond, but who have no power to create the obligation to give a bond or to waive that obligation.  It was not for these officials to

determine whether the franchise had been forfeited, or to assume a forfeiture.

It is asserted in appellant's brief that the board of public improvements informed appellant that a temporary writ of injunction had been issued against the board to prevent the issuance of a permit to the West End Light & Power Company for the purpose of testing a franchise similar to that of appellant, and that said board had recognized the right of said West End Light & Power Company as lawfully entitled to permits, and further, through its president, assured appellant that when such injunction proceeding should be terminated in favor of said company, there would be no further delay in granting a permit to appellant. The brief contains no reference to pages of the abstract where the evidence may be found to support these assertions. We have looked carefully through the abstract, and find none either given or offered of any promise on the part of the board to grant a permit to appellant on any contingency. Appellant made this offer of proof, and nothing more:

"I offer to prove this, that after these applications were filed back in the early part of 1909, the president of the board told Mr. Wurdack, this witness, who inquired of Mr. O'Reilly, as such president, what the delay was in acting upon these applications, that they did not care to make—to take any action upon the application until after the disposition by the circuit court of this city of the case of Trigg against the board, which was then pending, and which involved the franchise of the West End Light & Power Company under ordinance 12723, and for that reason he said those applications would be delayed—action on them would be delayed."

On June 22, 1909, the application for a permit was denied by the board, and on the same day this suit was instituted to forfeit the franchise.

Appellant offered in evidence an official written opinion by the then city counselor, of date March 26, 1909, favorable to the claims of appellant, also similar opinions of dates August 11, 1908, and November 25, 1908, favorable to the West End Light & Power Company. These opinions, though ruled out by the trial court, are contained in the record. They were given to the board of public improvements and to the mayor. Obviously, the city counselor has no power to bind the city in waiver or estoppel by his opinion, which may or may not be acted upon. It does not appear that appellant knew of these opinions, much less that it based any action upon them.

This suit was instituted in June, 1909. In 1910 the assessor of the city of St. Louis made an assessment against appellant on this franchise of $500,000. An appeal was taken by appellant to the board of equalization, which appeal was pending at the time of trial of this case. As this act of the assessor occurred long after the institution of the suit, it could not affect a case which was made up when the permit was refused. Certainly, the appellant will not claim that it has, since the institution of this suit, changed its position upon the faith of this assessment. It appears from the record that when he made this assessment, the assessor did not know that the right to this franchise was questioned by the city.

Appellant also sought to introduce the pleadings and judgment in the case of one Trigg against the West End Light & Power Company, which company held a similar franchise. This was a suit by a property owner to enjoin the board from granting a permit to said company. The injunction was refused. The circuit court refused to consider the question of abandonment, although intimating in its opinion that the evidence showed abandonment, holding that under our ruling in the Kavanaugh case, supra, the question could be raised only in *quo warranto*. We are unable

to see that the proceedings in the Trigg case have any bearing here. They were pending, according to appellant's contention, when it applied for a permit, and appellant was advised that such proceedings involved the validity of a similar franchise.

Appellant also offered to prove that the board of public improvements granted permits to the West End Light & Power Company to string wires. The record shows one such permit granted in December, 1908. The record does not show any knowledge on the part of appellant of such permit.

The claims of waiver and estoppel are based upon the proposition that in the enactment of ordinance No. 12723 the city was exercising its proprietary rights. If the granting of the right to string electric wires upon and along the streets of the city was in the exercise of a delegated governmental power, then the franchise is in effect a grant from the State, and it follows that the right of the State to recall the grant, upon sufficient grounds, cannot be waived by the acts of the city officers referred to. [Wright v. City of Doniphan, 169 Mo. 601; State ex rel. v. Railroad, 140 Mo. 539; 2 Abbott on Munic. Corp., Sec. 666.] We need not extend the discussion on this point, because counsel for appellant concede it in the following proposition laid down in their brief:

"The contention that municipal corporations can never be subjected to the doctrine of estoppel *in pais* is manifestly unsound. The law is that such corporations, when acting in their proprietary, as contradistinguished from their governmental, capacity, are subject to estoppel *in pais* to the same extent as private corporations."

To support the proposition of proprietary action by the city, appellant cites State ex rel. Subway Co. v. St. Louis, 145 Mo. 551; State ex rel. v. Gates, 190 Mo. 540; Louisville v. Cumberland Tel. Co., 224 U. S. 649.

In the Subway case it was held that the Subway Company, having been organized under the provisions of the general statutes relating to telegraph and telephone companies, derived its right to the use of the streets directly from the State by virtue of Sec. 2721, R. S. 1889 (now Sec. 3326, R. S. 1909), and that the city, in contracting with the company by ordinance as to the manner and place of installation, was exercising its proprietary rights. The right to use the streets of the city, that is, the franchise, was not involved. That was derived directly from the State, and not through the city as agent for the State. The action was not *quo warranto* to oust the company of its franchise. It was mandamus by the company to compel the city to carry out its contract.

The case of State ex rel. v. Gates, cited by appellant, supra, was a suit by injunction involving an ordinance contractual in character, in that it proposed modifications of existing contracts for furnishing gas to the inhabitants of the city, and the use of the streets incidental thereto. The petition charged corruption on the part of the city officials in the making of the contract through the ordinance whose passage was sought to be enjoined. That case does not involve the life of the franchise derived from the State through the city. The decision quotes with approval this from Bank v. City, 76 Fed. 282: ''In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers.''

The case of Louisville v. Cumberland Tel. Co., supra, is not in point. That case involves the right of the city to repeal an ordinance under which vested contract rights had been acquired. In the Kansas City case (State ex rel. v. Railroad, 140 Mo. 539), we hold that the granting by the city of a franchise to use the streets for the public benefit is governmental, and that the franchise is granted by the State through the city

as its agent. This case is approved in Kavanaugh v. St. Louis, 220 Mo. 496. Other cases to the same effect are cited in the opinion of GRAVES, J., in the Kavanaugh case.

A consideration of the true distinction between the governmental and proprietary powers of a city will reconcile these decisions. So far as the city grants the mere right to use the streets, it is exercising, by delegation, a power which resides in the State, and which is by its nature governmental. It is in legal effect a grant by the State. Consequently, if grounds for forfeiture arise, the State alone may enforce it and regain its grant, and the State alone may waive the forfeiture. In addition to the power delegated by the State to the city to exercise this governmental function, the city is also empowered to impose conditions upon the grant for its own benefit. It may determine the manner of the use, service to be rendered, compensation to be paid, etc. Regarding these matters, outside the mere right to use the streets, the city acts in its proprietary capacity, and herein waiver and estoppel may be invoked against the city, based upon the acts of the city officials done within the scope of their official duty. It has been said that " 'franchise' is the grant from the State, of authority to occupy the streets; 'licenses' are the designation by the council of the streets to be occupied; and 'contracts' are the stipulated arrangements between the companies and the city, as to the manner of occupancy." [Govin v. Chicago, 132 Fed. 848.] Treating the right to use the streets in question as a franchise in the above sense, we hold that the right of forfeiture by the State could not be waived by the acts of the city officials of the character above referred to. In State ex rel. v. Railroad, supra, l. c. 558, this court emphatically says: "Moreover, the city had no power or authority by ordinance or otherwise to take away from its sovereign the right to proceed by its public officer, the prosecuting attorney of the county, against

the defendant by *quo warranto* for ouster of its franchises upon the ground of their forfeiture.'' The conclusion reached by us and the former rulings above cited apply with peculiar force to ordinance 12723, which names no grantee, by itself creates no contract, and is in form a general law.

The cases cited by appellant to support the proposition that a city, acting in its private or proprietary capacity, may be estopped by the conduct of its proper officers, do not apply to the situation here. Other cases cited, to the effect that the State may be barred by long acquiescence in a use or by express recognition by governmental authority, are not in point, because there are no facts to which they can be applied. The following is cited by appellant from State ex rel. v. Water Co., 32 L. R. A. 391, l. c. 393:

''The State may waive the right to bring an action on behalf of the public by mere delay in moving to institute proceedings while the corporation, in carrying out, in good faith, the purposes of the organization, expends large sums of money.''

Obviously, this doctrine has no application to the facts in this case. There is even less ground upon which to base a claim of estoppel. There is no evidence that appellant changed its position to its detriment, or expended any money, upon the faith of any of the acts of the city officials. Appellant organized in February, 1908, with a capital of $5000, and contracted to buy this franchise in August, 1908. It invested $2000, and contracted to pay $11,000 additional in case the right should be recognized by the city. On the face of. the contract, it was recognized by the parties that the rights sought to be transferred were not certain and clear. There is no evidence of any further outlay by appellant at any time, excepting as appears in its return for taxation made in December, 1909, in which all its personal property, said therein to comprise office furniture only, is valued at $200. Nor is there any

evidence of any action taken by appellant to exercise its rights under the contract of purchase, except the application for a permit and the giving of the bond. Except in the matter of the giving of the bond, it has not been shown upon the record that appellant took any action or expended any money because of anything said or done by any city official.

Fourth, "By legislative acts." Ordinance 12723 was a general ordinance which purported to extend its privileges to any one who might thereafter accept and comply with its terms. In 1892 the city changed its policy, and by ordinance provided that no wires, tubes or cables, conveying electricity, should thereafter be placed along or across streets unless duly authorized by the municipal assembly, and, as by such ordinance provided, excepting persons, firms or corporations which had, previous to the passage of the ordinance "accepted and complied with ordinance 12723." [Ordinance 16894, approved October 26, 1892.] The effect of this exception in the above ordinance of 1892 was to respect rights which had been acquired under ordinance 12723, and which were in existence when the ordinance of 1892 was enacted; and such is the effect, and nothing more, of ordinances passed subsequent to 1892, namely, to recognize and respect existing rights and contracts. The words "complied with," used in the ordinance of 1892, mean something more than filing the original acceptance and bond. They mean a performance of that duty which we have held to be of the essence of the contract, namely, serving the public. No one who had failed to comply with the ordinance in this respect could claim to come within the exception. The legislative acts of the city did no more than recognize the obligations of contracts protected by the Constitution. The same question arises whether we consider the ordinances passed subsequent to 1884, or whether we do not consider them, namely, have appellant's grantors complied with the

implied obligation to serve the public? Unless this question can be answered in the affirmative, there has been a failure to comply with the terms of ordinance 12723.

In our judgment, the State has sustained its charge of abandonment. Therefore, without regard to other questions raised, the judgment must be affirmed. It is so ordered.

All concur, except *Woodson, J.*, not sitting.